In re MARATHON HOME LOANS, Debtor.

Bernice W. CHAMBERS, Plaintiff,

v.

MARATHON HOME LOANS, Marathon Home Loans, Inc., a California Corporation, Marathon Fund One, a California Limited Partnership, Emily Sudduth, Homestead Securities Corporation, a California Corporation, David S. Hirshfeld, M.D., FBO Defined Benefit Pension Plan, and Gregory Reide, Defendants.

Bankruptcy No. 288–M0116–C–11.
Adv. No. 288–0359.

United States Bankruptcy Court,
E.D. California.

May 31, 1989.

See also, D.C., 96 B.R. 296.

---

David T. Cohen, Robinson, Diamant, Brill & Klausner, Century City, Cal., for debtor/defendant.

Ilene J. Jacobs, Cal. Rural Legal Assistance, Marysville, Cal., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO ORDER TO SHOW CAUSE

CHRISTOPHER M. KLEIN,
Bankruptcy Judge:

On March 2, 1989, a hearing was held on the Order To Show Cause issued January 25, 1989, regarding sanctions in connection with the bankruptcy trustee's activities in connection with the removal from California Superior Court, Sutter County, of a multi-defendant civil action sounding in theories of fraud, tort, and statutory violations.

### FINDINGS OF FACT

The facts set forth in this court's Report And Recommendation For Disposition Of Motion For Remand filed December 2, 1988, and adopted in full by the United States District Court on January 19, 1989, include the following findings of fact that are incorporated herein:

1. Bernice Chambers ("Chambers") borrowed money through Marathon Home Loans ("Marathon"), giving a deed of trust against her residence. Chambers is a 72-year-old widow who is an invalid and who is able to sign her name only with a mark. The loan later became the subject of foreclosure proceedings prosecuted by Marathon in Sutter County, California.

2. Marathon is now a chapter 11 debtor in bankruptcy case No. LA-88-10557-NRR in the United States Bankruptcy Court, Central District of California.

3. Chambers filed a proof of claim in Marathon's bankruptcy and, in addition, moved for relief from the automatic stay. She sought permission from Marathon's bankruptcy court (a) to file a complaint in Sutter County Superior Court that would name Marathon as one of seven defendants in an action grounded upon various counts sounding in fraud, other torts, and statutory lender liability theories and (b) to obtain preliminary relief blocking a foreclosure sale that had been scheduled by Marathon.

4. A copy of the proposed complaint was included with Chambers' motion for relief from the automatic stay. At least four of the other six defendants are not debtors in bankruptcy cases.

5. Several of the counts in the complaint provide a basis, assuming the predi-

cate facts are ultimately established at trial, for judgments against nondebtor defendants as well as the debtor.

6. The hearing on the motion for relief from automatic stay was held at 2:00 p.m. on July 13, 1988, before the Honorable Robin Riblet, United States Bankruptcy Judge, Central District of California.

7. At the hearing on relief from stay, counsel for Marathon's chapter 11 trustee, counsel for Marathon itself, and counsel for the beneficiary of the deed of trust all appeared and opposed the proposed relief from the automatic stay, arguing that the proposed litigation would detrimentally affect the bankruptcy estate, and that it would be inconvenient and inappropriate to litigate in Sutter County Superior court.

8. Judge Riblet, at the conclusion of the hearing, orally granted the motion to permit Chambers to prosecute the state court action, obtain preliminary relief, obtain final judgment against any or all defendants, and enforce a judgment against any defendants and assets other than assets of the bankruptcy estate.

9. An Order For Relief From Automatic Stay in *In re Marathon Home Loans* containing the following provisions was signed and filed July 15, 1988, and entered on the docket July 26, 1988:

1) That the automatic stay pursuant to Bankruptcy Code § 362 which became operative upon the filing of the Petition for Bankruptcy in this case is lifted to allow the Movant to adjudicate her claims.

2) This Order is effective only as to Movant, Bernice W. Chambers.

3) The stay is not lifted to allow enforcement of a judgment against assets of the bankruptcy estate.

/s/ Robin Riblet

10. No appeal was taken from the Order For Relief From Automatic Stay.

11. The trustee actually had a copy of the intended complaint before July 13, 1988.

12. Chambers' Complaint was filed on July 14, 1988, in Superior Court of California, County of Sutter, and assigned docket No. 40210. That court granted a temporary restraining order the same day restraining Marathon's foreclosure sale, which also had been scheduled for that date.

13. On July 14, 1988, counsel for the trustee was notified by telephone that the case had been filed in Sutter County and that the temporary restraining order had been granted.

14. The trustee actually received a copy of the temporary Restraining Order on July 18, 1988.

15. The trustee actually received a copy of the filed Complaint on July 20, 1988.

16. The trustee filed his Application For Removal in the Eastern District of California on August 18, 1988.

17. The trustee gave, as bases to support removal, his assertion that the proper forum for resolution of the plaintiff's claim is the bankruptcy court and his assertion that, without removal, duplicative litigation in multiple forums would result.

18. If the trustee succeeded in resisting the motion for remand, he intended to have the matter transferred to the federal courts in the Central District of California.

I now make the following, additional findings regarding the Order To Show Cause on the issue of sanctions.

19. The trustee believes that Marathon bankruptcy is a no asset case. (Declaration of Lawrence A. Diamant, paragraph 3.)

20. The trustee believes, and believed at the time of causing the removal, that Chambers' claim will have no value in the Marathon bankruptcy case because tax claims alone exceed the sum which the trustee expects to achieve from selling the loan servicing package of Marathon. (Declaration of Lawrence A. Diamant, paragraph 9.)

21. The trustee represented to the court that Chambers' motion for relief from the automatic stay and the proceedings thereon were ex parte. (Trustee's Response To Bernice W. Chambers' Motion For Remand And Objection To Application For Removal

at 4–5.) The motion was not ex parte, as that term is understood in federal courts. It was heard in open court, on notice to the trustee, and with the actual appearance in opposition by counsel for the trustee. The only ex parte aspect was a preliminary request for an order shortening time to permit the hearing to be held on shortened notice.

22. The trustee, and his counsel, intentionally attempted to create the impression with this court that the trustee had not been afforded his day in court on the question of relief from the automatic stay. This was done by intentionally omitting to note that the trustee had appeared through counsel, together with counsel for Marathon itself and counsel for the beneficiary of the deed of trust, and opposed the proposed relief from the automatic stay, arguing that the litigation that Chambers' wished to file in Sutter County Superior Court would detrimentally affect the bankruptcy estate, and that it would be inconvenient and inappropriate to litigate in Sutter County.

23. Homestead Securities Corporation ("Homestead") is the trustee on the Chambers' deed of trust and has no other interest in the Chambers' residence. Homestead is a subsidiary or affiliate of Marathon and is the debtor in a chapter 11 case that was filed at the behest of Marathon's trustee.

24. Homestead is the trustee on the deed of trust from Myron E. Gire and Alice Z. Gire on a parcel of motel property in Yolo County given to secure a $285,000 loan placed by Marathon in which Marathon is the mortgage servicing agent. That property is within the jurisdiction of this court in the bankruptcy case currently pending entitled *In re Alice Z. Gire*, No. 288–00269–C–11, Bankr.E.D.Cal. *In re Alice Z. Gire*, No. 288–00269–C–11, Order Approving Lien–Free Sale Of Property at 3 and Ex. B at 3, (Bankr.E.D.Cal. March 6, 1989).

25. The trustee does not believe that Homestead has any interest implicating the automatic stay where Homestead is merely the trustee on a deed of trust securing a loan that is serviced by Marathon. *In re Alice Z. Gire*, No. 288–00269–C–11, Stipulation Re Proceeds Of Sale And Order Approving (Bankr.E.D.Cal.) (prepared and executed by trustee May 9, 1989); Fed.R. Evid. 201 and 801(d)(2).

26. The prevailing rates for professional services in the community for attorneys with comparable skill and experience as counsel for Chambers are $100.00 per hour for actual legal services and $25.00 per hour for travel time.

27. Counsel for California Rural Legal Assistance spent a total of 88.5 billable hours working on the removal and remand aspects of the litigation. A total of 1.75 hours was spent in travel.

## CONCLUSIONS OF LAW

The basic problem that underlies this situation is that the trustee, and the law firm of which he is a named partner and which acts as his counsel, are determined to throw up every possible roadblock, one at a time, in front of Chambers and her counsel, California Rural Legal Assistance. The individual actions in setting up the obstacles are legally permissible, based upon technical, frequently hypertechnical, analyses of law and procedure in which the goals of substantive justice are sacrificed on the altar of gamesmanship.

Marathon's bankruptcy judge authorized Chambers to file her action in Sutter County Superior Court, lifting the automatic stay for that purpose. Chambers' proposed complaint, with designation of all parties and all theories of relief, was before Judge Riblet. The trustee argued that Chambers should not be allowed to proceed in Sutter County. He argued the same theories that were subsequently advanced in this court on the motion to remand. He lost and did not appeal.

After Chambers filed her action in Sutter County, the trustee removed the action, pursuant to 28 U.S.C. § 1952. Chambers moved to remand. This court, and the district court, agreed with Chambers and with Judge Riblet that the matter was appropri-

ate to proceed in Sutter County Superior Court.

There is no question that the trustee was entitled, as a matter of law, to cause the removal of all or part of the action from Sutter County Superior Court. If that were all there was to the matter, this court would not now be seriously entertaining the question of sanctions.

The factor that tips the scales toward the conclusion that the trustee was proceeding for an improper purpose is that the trustee conceded that if the motion for remand were to be denied, he would seek to have the case transferred to the Central District of California, the very place where he had unsuccessfully attempted to keep the matter in the first place. His purpose in this court was an end run that was inconsistent with orderly and timely administration of justice.

Another factor makes the trustee's motives suspect. The trustee avers that the Marathon case is a "no asset" case. He believes, and believed at the time of causing the removal, that Chambers' claim will have no value in the Marathon bankruptcy case because tax claims alone exceed the sum that the trustee expects to achieve from selling Marathon's principal asset: the bundle of rights that is described as a "loan servicing package." In other words, he thinks that after payment of priority claims and of expenses of administration that include the trustee's fees and expenses, there will be nothing for unsecured creditors.

The trustee's sworn declaration belies his protestation that there was no improper purpose. He says that he was attempting to avoid the imposition of a nonallowable punitive damage award that might be made by the state court. Since the trustee concedes that priority tax claims are likely to consume property of the estate and since he believes that punitive damage claims are not allowable claims in bankruptcy, it is difficult to understand how the trustee's activities could possibly make a difference. The primary beneficiaries of stalling are the various other nondebtor defendants to Chambers' suit. Creditors will not benefit. Of course, the trustee and his law firm would benefit if they could obtain an award of fees and expenses for these efforts.

One problem with excessive gamesmanship is that it is expensive and inefficient. The time and effort that the trustee has been devoting to his attempt to prevent the Chambers' case from going forward in Sutter County Superior Court exceed the time and effort that would have been required to try the case on the merits. In his exuberance for the competitive aspects of civil procedure, the trustee has lost sight of the goal of substantial justice and has lost sight of fundamental tenets of economic decisionmaking.[1]

Nor is the gamesmanship over. The trustee now asserts, for the first time, that the automatic stay that arises in the Homestead bankruptcy case prevents the Sutter County action from going forward and further dictates the advisability of having the entire matter sent to the Central District of California. That tends to confirm the trustee's improper purpose. First, the trustee is also the trustee in Homestead, having filed the petition on behalf of Homestead in his capacity as trustee for Marathon, and was the trustee at the time of the original removal and motion to remand.

Of greater significance, the trustee has, in another bankruptcy case in this court, taken the position that the Homestead automatic stay does not apply to a sale of property as to which Homestead is the trustee on a deed of trust securing a loan

---

1. While courts ordinarily discourage the type of satellite litigation that involves sanction matters, a court's investment of time on a sanctions matter that establishes standards for conduct for the general guidance of the bar yields positive returns by enabling future counsel in future matters to make intelligent decisions about the type of arguments and tactics that are wise to eschew. Such guidance improves the adminis-

tration of justice by directing the resources of the bench and the bar to resolution of significant and nonfrivolous issues. *Vaccaro v. Stephens,* No. 87–1777, slip op. at 4516–17 (9th Cir. May 1, 1989) (Sneed, J., concurring).

Needless to say, I regard the trustee's type of advocacy as unpersuasive and counterproductive.

serviced by Marathon. *In re Alice Z. Gire,* No. 288-00269-C-11, Stipulation Re Proceeds Of Sale And Order Approving. That stipulation is instructive. It was prepared on the pleading stationery of Robinson, Diamant, Brill & Klausner. It was executed by Lawrence A. Diamant's attorney on May 9, 1989, and subsequently sent to counsel for Alice Z. Gire, who, along with Alice Z. Gire, executed it on May 11, 1989. In the stipulation, the trustee mentions Marathon ten times and says nothing whatsoever about Homestead.

I conclude that the trustee and his counsel have known from the outset that they would assert that the Homestead automatic stay is an obstacle, and they have been holding the argument in reserve for when they needed it to further their improper purpose.[2] I further conclude that the trustee does not believe that the argument is meritorious or substantial.

Moreover, there is considerable doubt that an automatic stay in the Homestead bankruptcy case has any effect upon the Chambers' case. The evidence of record is that Homestead is the trustee on the Chambers' deed of trust. That suggests that the deed of trust, under the circumstances of the case in which the beneficiary and all other interested parties are also party to the lawsuit, may not be property of the estate or property to be obtained from the estate and that the automatic stay may not apply. 11 U.S.C. § 541(b)(1).

In any event, if Chambers were to go to Los Angeles and make another request for relief from the automatic stay, this time in the Homestead bankruptcy case, the matter would be in front of the same bankruptcy judge who already authorized her to proceed in Sutter County. It is fair to predict that Judge Riblet would adhere to her prior determination and grant relief from the stay. It also is of some significance that the nondebtor beneficiary of the Chambers' deed of trust, who is a named defendant in Chambers' state court action

and who ultimately is the real party in interest, stipulated to the preliminary injunction that was issued by the Sutter County Superior Court stopping the foreclosure.

Further inferences about the intent of the trustee and his counsel flow from the series of half-truths that appear throughout their papers. There was, for example, the intentional attempt to create the impression that the trustee had not been afforded his day in court before Judge Riblet on the original motion for relief from automatic stay. He repeatedly refers to that proceeding as having been ex parte and fails to mention that his counsel was present, argued, and lost on the merits. This type of omission makes a difference.

In the circumstances of this case, such omissions were worse than mere ineffective advocacy. They fit within a pattern of doubtful conduct in a fashion such that the omissions constitute an intentional attempt to mislead the court.[3] *See* Rule 7-105(1), Rules of Professional Conduct of the State Bar of California. And they were worse than a mere breach of the type of duty of candor as to the applicability of which there is some debate in this circuit. *Compare Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531 (9th Cir.1986), *with Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 809 F.2d 584 (9th Cir.1987) (dissent from denial of rehearing en banc).

The inaccuracies so infected the papers and argument that, had there been any attention to the actual situation, sober counsel would not have burdened the parties in this court with the matter.

Sanctions can be imposed for the type of conduct in question pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. Bankruptcy Rule 9011 operates as a virtual clone of Rule 11. Judicial decisions interpreting and applying Rule 11 are applicable to Bankruptcy Rule 9011 matters.

---

2. "O what a tangled web we weave when first we practice to deceive." Sir Walter Scott, *Marmion,* canto vi, stanza 17.

3. The court was not misled, primarily because the trustee's opponent was a competent legal craftsman who took issue at the appropriate points and made the adversarial process work.

The leading case in this circuit enunciating the standards for applying Rule 11 sanctions recognizes that there are two prongs to the rule: frivolousness and improper purpose. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986). Improper purpose is implicated in this case by virtue of harassment or abusive litigation activity.

One focuses on the improper purpose of the person who signed the pleadings, objectively tested, rather than focusing upon the consequences of the pleadings, subjectively viewed from the perspective of the putative victim of the harassment. *See Zaldivar,* 780 F.2d at 832.

■ If a motion or paper, other than a complaint, is filed as part of a persistent pattern of abusive litigation activity, it may be deemed to have been filed for an improper purpose and be sanctionable notwithstanding that the motion or paper may be objectively reasonable and, thus, not frivolous. *Aetna Life Ins. Co. v. Alla Med. Serv., Inc.,* 855 F.2d 1470, 1476 (9th Cir.1988).

■ The challenge for a trial court is to construe Rule 11 (and Bankruptcy Rule 9011) so as to promote the goal of limiting harassment, delay, and expense without simultaneously impinging upon the duty of counsel to represent a client zealously, and so as not to chill an attorney's enthusiasm or creativity or to impede the dynamic by which the common law adjusts to changing situations. *Aetna Life Ins. Co.,* 855 F.2d at 1496: *Golden Eagle Distrib. Corp.,* 801 F.2d at 1536. Rule 11 is meant to discourage pettifoggery, but not creative lawyering. *Vaccaro,* No. 87-1777, slip op. at 4508.

■ Bearing those considerations in mind, I am persuaded that the conduct of the trustee and his counsel in prosecuting the removal and fighting over the motion to remand was in the nature of abusive litigation tactics and harassment rather than in the nature of zealous advocacy of the merits of a case or an effort to facilitate the adjustment of the common law to changing situations. They were pettifogging. Their main purpose was to make the prosecution by Chambers of her civil action so cumbersome, difficult, protracted, and expensive as to cause her to give up in frustration before a court of competent jurisdiction could focus upon the merits of her claims.

The same conduct that justifies sanctions under Bankruptcy Rule 9011 also may be considered under section 1927 if it also appears that counsel acted recklessly or in bad faith in multiplying proceedings unreasonably and vexatiously. That necessitates an express finding as to the sanctioned counsel's state of mind. *See Toombs v. Leone,* 777 F.2d 465 (9th Cir.1985). I am persuaded by clear and convincing evidence that the trustee, who is an attorney, and his counsel, the law firm in which the trustee is a named partner, subjectively intended to defend by a procedural war of scorched-earth attrition, seeking every opportunity for interposing further obstacles to the consideration of Chambers' claims on the merits. They acted in bad faith. Accordingly, sanctions are also appropriate under section 1927.

Turning to the question of which sanctions to impose, I start with the shifting of fees. Chambers' counsel was required to devote a substantial amount of time and effort to resisting the unnecessary and inappropriate litigation activity. She endeavored throughout to prosecute the litigation efficiently. In the absence of a basis for awarding fees at a different rate, the lodestar is presumptively the rate to apply and will be applied in this case.[4]

Counsel from California Rural Legal Assistance has been the match for counsel for

---

**4.** It makes no difference that Chambers' counsel is a salaried employee of California Rural Legal Assistance, who is not billing on the same basis as attorneys in private practice. California Rural Legal Assistance necessarily incurred the expense associated with the diversion of its employee's attention from other needed legal services to other needy clients. Moreover, compensation below the lodestar rate would create unfortunate economic incentives that would make it less expensive for an attorney to pursue abusive litigation activity against a lawyer acting *pro bono* than against a lawyer who is billing at the usual hourly rates.

the trustee. She has, as noted above, dealt with the trustee's various maneuvers in a craftsmanlike manner. She has made a competent record that the lodestar rate for an attorney of her experience and background working in this type of matter is $100.00 per billable hour, plus $25.00 per hour for travel time. Appropriate lodestar compensation for California Rural Legal Assistance is $8,850.00 for 88.5 hours at the lodestar rate of $100.00 per hour plus $43.50 for 1.75 hours of travel time. These services were actually and necessarily performed. In addition, costs of $56.70 were incurred.

Fees will be shifted. The trustee and his counsel (recalling that his counsel is the law firm in which the trustee is a named partner) are the ones who have created the problem and should bear the burden. Accordingly, it will be ordered that the trustee and/or his law firm pay to California Rural Legal Assistance $8,950.20.

Nor should the trustee and his counsel profit from their abusive litigation tactics. Although I am not the judge to whom they will be presenting applications for compensation pursuant to 11 U.S.C. § 330, and although I will not (and could not) presume to interfere with that judge's independent determinations on such applications, I can, as a sanction, require that the trustee and his law firm report to that judge my findings regarding their conduct in this court. Accordingly, as a sanction, it will be declared that the legal services on behalf of the trustee at all times in this court did not constitute necessary services, and the trustee will be ordered to report this determination in every application for compensation pursuant to 11 U.S.C. § 330 or 331.

An appropriate order will issue.