In re A.S.M., INC., d/b/a San Antonio Resources, Debtor.

NCNB TEXAS NATIONAL BANK, Plaintiff,

v.

A.S.M., INC., Guy Warren Hughes, Guy Wesley Hughes, H. Dale Kane, Jim Lindsey, Stephen S. Schiffman and Louisiana West, Inc., Defendants.

Bankruptcy No. 89–52331–K.

Adv. No. 89–5229–K.

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

Jan. 2, 1990.

---

Joel H. Klein and Michael Golightly, Klein & Klein, Inc., San Antonio, Tex., for debtor.

Keith M. Baker and Ronald J. Johnson, San Antonio, Tex., for plaintiff.

William B. Kingman and Richard L. Kerr, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, Tex., for Guy Warren Hughes, Guy Wesley Hughes, and H. Dale Kane.

## DECISION AND ORDER ON SUA SPONTE SHOW CAUSE HEARING REGARDING IMPOSITION OF SANCTIONS FOR IMPROPER REMOVAL

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing *sua sponte* the defendants herein to show cause why sanc-

tions should not be imposed pursuant to Rule 9011 for improperly removing the aforementioned action from state to federal court. The court concludes that sanctions should be imposed.

## BACKGROUND FACTS

After a hearing on the plaintiff's motion to remand, this court entered its report and recommendation to the district court that this case be remanded to state court for trial. To date, the district court has not entered an order on the matter. In the report, the court detailed its reasons for counseling remand, noting, *inter alia*, (1) the presence of nondebtors in the removed action who stood to collaterally but unjustifiably benefit from the removal, (2) the timing of the removal (on the eve of trial in state court), (3) the pattern of continuances leading up to the trial setting in state court, (4) the predominance of state law issues, (5) the fact that the debtor could be easily severed from the state law action, and (6) the fact that removal operated as a "free injunction" without the nondebtor defendants having to establish their entitlement to such an injunction.

Collateral to the report and recommendation, this court also entered an order *sua sponte*, compelling the defendants and their respective counsel [1] to appear to show cause why sanctions should not issue for their having filed the removal petition in the first place. The parties presented arguments and evidence at that hearing, upon which the findings set out in this decision are premised.

The state court law suit was commenced in November 1988. In May 1989, defendants A.S.M. ("Debtor"), Guy Warren Hughes, and Guy Wesley Hughes (collectively "Hughes") filed a counterclaim against the plaintiff, NCNB Texas National Bank ("NCNB"). On July 18, 1989, NCNB filed an emergency motion for a July 31 trial setting. On July 27, 1989, the state court ruled that the parties were to appear

1. Jim Lindsey, Stephen Schiffman, and Louisiana West, Inc. are no longer parties in this law suit and so of course did not appear.

at the monitoring docket at 8:30 a.m. on July 31st. The next day (July 28th), the bankruptcy was filed, along with the removal petition. The bankruptcy petition was originally prepared and was ready for filing July 7th, but the defendants held off filing. A trial setting for about that time was continued, relieving the pressure to file the bankruptcy just then.

The defendants insist that they lacked any intent to hinder, delay or harass, maintaining that the bankruptcy filing and the attendant removal were intended to preserve the debtor's most valuable "asset," the attention and financial commitment of the Hughes. They add that the precise timing of the petitions (bankruptcy and removal) can be traced directly to when the funds were available to pay bankruptcy counsel's retainer. The debtor adds that NCNB has been "hounding" the Hughes, who are guarantors of A.S.M.'s debt to NCNB, with a variety of zealously pursued litigation and collection activity ranging from injunctions to attempted involuntary receiverships. NCNB counters that the Hughes have embarked on a concentrated drive to prefer all other creditors over NCNB and to shelter assets from NCNB's reach, warranting the "scorched earth" policy it is accused of pursuing against them.

The evidence is not conclusive whether the removal in fact delayed the trial of the state court suit, but it is persuasive. The emergency motion of NCNB had been granted and the state court judge had indicated to the parties that "you're going to be reached—be ready—no need for a preferential setting." Even though a preferential setting was not in fact granted, no reasonable attorney could have doubted the likelihood that the matter would go to trial, absent some unforeseen delay occasioned by the state court's own docket. The state court judge certainly made it abundantly clear that he intended the matter to be tried the last week of July 1989. The facts strongly suggest an intent to delay the state court trial with the removal filing.

The defendants counter that NCNB has suffered no harm from the delay, and that removal was the only way to preserve any prospect for reorganization. Evidently, NCNB is receiving some net operating income from the properties, which are being maintained in good order by the Hughes.[2] The Hughes have put over $2.2 million into the company, and are evidently willing to infuse further capital into the enterprise. NCNB's pursuit of them will no debt hamper the debtor's reorganization efforts. By the same token, however, the Hughes' themselves would be the principal beneficiaries of any reorganization, not only because of their guaranties and their investment in the enterprise but also because they are both the largest unsecured creditors and the most expensive employees of A.S.M. (drawing salaries totalling $7,000 a month).

ANALYSIS

Bankruptcy Rule 9011 states that: The signature of an attorney or a party [on a petition, pleading, motion or other paper] constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.

"The rule ... has been violated and ... thus sanctions can be imposed either where the pleading has been interposed for any improper purpose, *or* where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading was well grounded." *In re Usoskin*, 61 B.R. 869 (Bankr.E.D.N.Y.1986); *but see Buy–N–Save, Cash & Carry, Inc. v. Un-*

---

**2.** According to the debtor, the real estate enjoys 100% occupancy. The Debtor points out that NCNB could hardly expect anything more than net operating income during the pendency of a bankruptcy case, which is what they are getting under the terms of a temporary injunction entered in the state court action. The high level of management is a bonus NCNB enjoys only because of the involvement of the Hughes.

*derwriters Ins. Co.*, 56 B.R. 644 (Bankr.S. D.N.Y.1986) (holding that, in addition to lacking any color, the claim must also be advanced for an improper purpose). Under the rule, sanctions are mandated once a violation of the rule has occurred.[3] Counsel is not immune merely because he or she was following the client's instructions. *In re Chicago Midwest Donut, Inc.*, 82 B.R. 943 (Bankr.N.D.Ill.1988).

■■■ Most courts hold that conduct under Rule 9011 is measured by an objective standard of "reasonableness under the circumstances" rather than mere subjective good faith. *See, e.g., In re Graves*, 70 B.R. 535 (N.D.Ind.1987). The "improper purpose" clause demands that a paper not be interposed for the purposes of delay, harassment or increasing expense, measured by this objective standard. *Chambers v. Marathon Home Loans*, 101 B.R. 216, 220 (Bankr.E.D.Cal.1989). The rule is designed to discourage unnecessary filings, so a violation of the rule is complete when the offending paper is filed. *In re Sowers*, 97 B.R. 480 (Bankr.N.D.Ind.1989).

■■■ Sanctions may be imposed upon an attorney, a party or client, or jointly and severally against both the attorney who signs the pleading in violation of Rule 9011 and the client for whose benefit the pleading was filed. *In re Martin*, 97 B.R. 1013 (Bankr.N.D.Ga.1989). In general allocation of sanctions between attorney and client should be according to their relative culpability in the violation. Where an attorney and client share responsibility for litigation strategy and that strategy violates the rule, the court is entitled to impose joint and several liability. *In re Pasko*, 97 B.R. 913 (Bankr.N.D.Ill.1988). Sanctions should only be imposed against a party not signing pleadings where the court has determined that sanctions are warranted against the client. *In re De Lorean Motor Co. Litigation*, 59 B.R. 329 (E.D.Mich.1986).[4]

■■■ While sanctions are mandated once the court determines that there has been a violation of Rule 9011, the actual sanctions imposed are discretionary. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 876 (5th Cir.1988). The test on review of an order imposing sanctions is abuse of discretion. *Id.* at 877; *In re Film Ventures International, Inc.*, 89 B.R. 80 (9th Cir. BAP 1988). The rule expressly endorses the imposition of costs, including attorney's fees, incurred as a result of submission of an improper pleading, motion or other paper. *Id.* at 878–79; *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327 (9th Cir.1981). In an action not itself brought in bad faith, however, attorneys' fees should only be awarded to offset costs of opposing the particular procedural moves found to be offensive under the rule. *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078 (2nd Cir. 1977). 28 U.S.C. § 1961(a), allowing interest on any money judgment in a civil case recovered in district court, applies to judgments entered by the bankruptcy courts, including sanctions awards under Rule 9011. *In re Mapson*, 93 B.R. 161 (Bankr.C. D.Ill.1988).

The nonviolating party "has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merits of the claims." *Thomas v. Capital Security Services, Inc.*, 836 F.2d at 879. At the same time, however, "when a court's *primary* purpose in imposing sanctions is to deter, not to compensate, a determination of the 'reasonableness' of fees and expenses does not necessarily depend on the steps taken to mitigate those expenses by the Rule 11 movant. Rather the relevant considerations become the conduct and resources of the party to be sanctioned." *Id.* at 881.

■■■ If a suit is removed to bankruptcy court for an improper purpose, e.g., harassment or abusive litigation activity, the rule

---

**3.** Compare 28 U.S.C.S. § 1927 under which imposition of sanctions is discretionary.

**4.** The Fifth Circuit has held that an attorney must actually sign a pleading or other paper in order to have sanctions applied. *Robinson v.*

*National Cash Register Co.*, 808 F.2d 1119 (5th Cir.1987). Other courts have taken a less restrictive view. *See, e.g., Calloway v. Marvel Entertainment Group*, 650 F.Supp. 684 (S.D.N.Y. 1986).

has been violated. An application for removal can be but one more part of a persistent pattern of abusive litigation activity. That removal is accomplished superficially "as of right" makes its employment no less sanctionable if it has been employed for an improper purpose. *See Chambers v. Marathon Home Loans*, 101 B.R. 216, 220 (Bankr.E.D.Cal.1989); *see also, Riley v. Dinardo*, 106 B.R. 275 (Bankr.M.D.Fla.1989).

■ The use (or abuse) of the removal process can be especially insidious in light of the current state of the procedure for handling applications for remand and abstention. Removal is accomplished automatically by way of an Application. It is effective on filing. The underlying state court litigation is brought immediately to a halt. A motion to remand or to abstain, once filed, must be set for hearing (because of the need for a report and recommendation), which takes at least days and usually weeks, even if set on an expedited basis. Once heard, the court must prepare the report and recommendation in accordance with Bankruptcy Rule 9033, tantamount to written findings and conclusions. Because of their length (and because many bankruptcy courts are quite busy), the preparation of this document can take days, weeks, or longer. After the report is submitted to the district court, parties have up to ten days to object to any portion of it, after which the district court is free to enter its order. Unfortunately, district courts are busy too, and it often takes weeks or even months to obtain a ruling on reports and recommendations from the bankruptcy courts. The upshot is that a party can obtain a "free" continuance of some considerable length[5] while the opposing party is forced to spend thousands of dollars in attorneys' fees trying to undo the improper removal. There is no "brake" on this sort of tactic built into either the removal statute or the rules which implement that statute. Without Rule 9011, the structure of the law on removal invites abuse.

It is clear from the record here that the primary, if not the sole, purpose for this removal application was delay. The defendants admit at the least that additional time was needed to come up with money for attorneys' fees, that the defendants needed breathing space, and that the removal was intended to provide the desired time. The defendants had previously sought continuances in state court and only filed for removal on the eve of the trial date, even though the bankruptcy petition (and attendant removal application) had been prepared for filing three weeks before, suggesting a pattern of abusive litigation tactics. The fact that the mandate to remand was clear and that the suit is better heard in state court is but another indicator of improper motive.[6]

■ Although the record is not clear whether it was the attorneys or the clients who decided to remove the suit, removal is a technical, procedural matter about which most laymen have little knowledge (including whether such a tactic is proper in light of Rule 9011). Sanctions should certainly be imposed on the attorneys who signed the removal petition, but the record is inadequate to support sanctions against the parties.

Based on the foregoing, the court herewith enters sanctions in the amount of $2,500.00 against counsel who signed the

---

**5.** The district court has yet to rule on the motion for remand in this case, some five months after the removal. Some jurisdictions report delays of as long as two years. The district judges of this district are currently suffering under the second highest level of drug case filings in the nation, while also shouldering the mass of civil and criminal litigation flowing out of Texas' savings and loan crisis. It is little wonder that they are having difficulty handling the additional bankruptcy load imposed on them by the 1984 amendments to the bankruptcy laws and the 1987 amendments to the bankruptcy rules.

**6.** This court shrinks from ruling that sanctions are appropriate whenever a court determines that remand (or even mandatory abstention) is warranted. Such a holding would cast an unwarranted chill on the ability of counsel to zealously represent their clients. Lawyers, however, are well advised to exercise considerable self-restraint in those situations in which the principle benefit of removal is delay, especially when efforts at delay have already been expended in the state court forum.

removal papers,[7] representing an award of attorneys' fees, costs and expenses reasonably incurred by the plaintiff to oppose the removal action. The award is payable to NCNB, but is not so much compensation for "damages incurred" as it is intended to be a deterrent against future abuse of the removal process by attorneys practicing in this district. In addition, interest on that award at the statutory rate (____%) from the date of filing of the application for removal to the date sanctions are imposed is appropriate.

So ORDERED.

See also, Bkrtcy., 95 B.R. 451.

---

7. Michael Golightly and Joel Klein, jointly and severally.