**FAYSOUND LIMITED, Appellee,**

v.

**FALCON JET CORP.**

**Walter Fuller Aircraft Sales, Inc., Appellant.**

**No. 90–2896EA.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1991.

Decided Aug. 1, 1991.

Michael Lowenberg, Dallas, Tex., for appellant, Michael Lowenberg, Melinda G. Jayson and Mary B. Spector, Dallas, Tex., on the brief.

Vincent Foster, Jr., Little Rock, Ark., for appellee, Vincent Foster, Jr. and Jess Askey III, Little Rock, Ark., on the brief.

Before ARNOLD, Circuit Judge, HEANEY, Senior Circuit Judge and WOLLMAN, Circuit Judge.

PER CURIAM.

This case is about who owns a Falcon jet. It is also about the procedural requirements for prosecuting an appeal. The District Court[1] awarded title to Faysound Limited, the plaintiff. Walter Fuller Aircraft Sales, Inc., which also claims title to the plane, appealed. After Fuller's notice of appeal had been filed, Falcon Jet Corporation, the other defendant, asked the District Court to amend its judgment in this case. The District Court denied the motion. Fuller did not file another notice of appeal after the District Court's judgment thus became final. Faysound now argues that Fuller's failure to file a timely and effective notice of appeal deprives this Court of jurisdiction. Fuller disagrees, of course, and offers several reasons why we

---

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

should continue on to the merits of this interesting dispute. The reasons are ingenious, but we are unconvinced. The appeal will be dismissed for lack of a final judgment supporting Fuller's notice of appeal.

## I.

Faysound is a Hong Kong corporation. In 1982 it purchased a Falcon 50 jet aircraft from Falcon Jet Corporation for a little over nine million dollars. Faysound promptly leased the jet to a Philippine corporation, United Coconut Chemicals, for five years. During the term of that lease, President Ferdinand Marcos fled the Philippines, and was succeeded by Corazon Aquino. As one of her first official acts, President Aquino established the Philippine Commission on Good Government. The Commission's job was to recover assets held by President Marcos and his associates that had, in effect, been plundered from the Philippine treasury. United Coconut was suspect. One of the corporation's largest stockholders was a close friend and advisor to Marcos. The Falcon was seized by the Commission in 1986. The writ of sequestration authorizing the seizure lapsed, however, in 1988. The Commission nonetheless continued to hold the jet, and in 1989 it sold the Falcon to Walter Fuller Aircraft Sales, Inc. Fuller flew the jet to Little Rock, Arkansas, for repairs at the Falcon Jet facility there.

Faysound then sued to recover the jet. Fuller and Falcon Jet Corporation were named as defendants. Falcon Jet delivered the jet into the custody of the District Court and cross-claimed for the storage costs. Fuller asserted good title based on its purchase from the Philippine government, acting through its agency, the Commission. The Commission's actions in acquiring the plane were, Fuller contended, acts of state, insulated from foreign judicial process. Faysound disagreed, countering with the treaty exception to the act-of-state doctrine. It argued that according to the Geneva *Convention on International Rights in Aircraft*, 4 U.S.T. 1830, T.I.A.S. 2847 (the United States and the Philippines are both signatories), the sequestration was improper from the start. And in any event, it had been lifted. The Commission could not convey to Fuller what it did not own.

The District Court sided with Faysound. On cross-motions for summary judgment, the Court rejected Fuller's act-of-state defense and awarded title to the jet to the plaintiff. The Court also rejected Falcon Jet's claim for storage costs. It held that it would be unfair to tax Faysound for a benefit the corporation had not sought. *Faysound Ltd. v. Walter Fuller Aircraft Sales, Inc.*, 748 F.Supp. 1365 (E.D.Ark. 1990). The District Court entered its judgment on October 29, 1990. On November 7th, Fuller filed a timely notice of appeal. Two days later, Falcon Jet filed a motion to amend the judgment. Fed.R.Civ.P. 59(e). This motion was also timely. It asked the District Court to reconsider its refusal to assess storage costs against Faysound. On January 22, 1991, the District Court entered its order denying Falcon Jet's motion to amend the judgment.

## II.

The appeal proceeded on a normal course. After briefing was completed and a variety of other motions had been dealt with, however, Faysound filed a motion to dismiss the appeal.[2] Faysound contends that Falcon Jet's Rule 59 motion voided Fuller's earlier notice of appeal. The judgment, it continues, was not final until the motion to amend had been decided. Fuller's failure to file a new notice of appeal after January 22 (when the District Court disposed of Falcon Jet's motion) allegedly dooms its appeal. The language of Federal Rule of Appellate Procedure 4(a)(4) strongly supports Faysound's analysis. "If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 to alter or

---

**2.** As Fuller points out, the motion was untimely, not having been filed within 15 days of the docketing of the appeal. See 8th Cir.R. 47A(b). However, we have a duty to examine our own jurisdiction, and to do so on our own motion if necessary. 8th Cir.R. 47A(a).

amend the judgment ..., [a] notice of appeal filed before the disposition of [that motion] shall have no effect."

The Supreme Court has strictly enforced Rule 4. In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam), the Court rejected the view that an appellate court has discretion to consider a case on the merits when the notice of appeal is filed during the pendency of a Rule 59 motion. Provident's notice of appeal was filed after a motion to amend the judgment had been docketed, but before the motion had been decided. The Court held that the notice "was a nullity." Relying on the plain language of Rule 4, the Court explained: "[I]t is as if no notice of appeal were filed at all. And if no notice of appeal is filed at all, the Court of Appeals lacks jurisdiction to act." *Griggs*, 459 U.S. at 61, 103 S.Ct. at 403. In dicta, the Court also addressed the situation presented in our case. "Professor Moore has aptly described the post–1979 effect of a Rule 59 motion on a previously filed notice of appeal: 'The appeal simply self-destructs.'" *Ibid* (quoting 9 Moore, Ward, & Lucas, *Moore's Federal Practice* ¶ 204.12[1], p. 4-65 n. 17 (1982)).

Fuller gives three reasons why its appeal remains intact. First, it argues that various pleadings filed in this Court after the judgment became final satisfy Fed.R. App.P. 3's requirements. Any one of these papers, according to Fuller, can and should be read as a notice of appeal. Second, it argues that the November 1990 notice of appeal is in fact sufficient. Fuller offers two paths to that conclusion: the *Forgay* doctrine, a narrow exception to the final-judgment rule, and the general appealability of injunctions under 28 U.S.C. § 1292(a)(1). Finally, Fuller argues that there are extraordinary circumstances present in this case that justify our taking jurisdiction. We are not persuaded by any of these arguments.

■ Assuming that the judgment became final on January 22, 1991, Fuller contends that it had until April 11, 1991, to notice its appeal. (This of course is more than 30 days. Fuller says a bankruptcy proceeding tolled the normal time period, and we assume this is correct.) Fuller filed several papers with our Court during that period. Those documents included notice that the bankruptcy stay had been lifted, Fuller's reply brief, and a motion to show cause and take judicial notice of a court decision in the Philippines. Each of these papers, Fuller says, satisfies the spirit of Rule 3, and includes all the required information: the parties, the judgment appealed from, and the court being appealed to. Fed.R.App.P. 3(c). We disagree. It is true that filing a sufficient notice of appeal in the court of appeals instead of the district court is not a good reason to dismiss the appeal. Fed.R.App.P. 4(a)(1). It is also true that "informality of form or title" is not a fatal error. Fed.R.App.P. 3(c). But on the far edge of informality lies insufficiency. Looking past the fact that Fuller's supposed notices were filed in the wrong court, and reading those papers generously, Fuller's pleadings are still insufficient: they do not specify correctly the judgment being appealed from. All the various documents specify instead the District Court's October order, the original judgment, and not the final judgment entered on January 22, 1991, with the denial of Falcon Jet's post-judgment motion.

It is perfectly true, as Fuller repeatedly points out, that all during the spring of 1991, or at least until Faysound filed its motion to dismiss on May 16, all of the parties and this Court assumed that the appeal was properly before us, that there was no question as to its timeliness, and that the case was proceeding on course. It is also true that the technical error upon which Faysound has seized has not misled it in any material way, or caused it any prejudice. In these circumstances, there is a strong temptation to try to find a way around the technical problem, for example, by treating the various papers filed with us by Fuller, or one of them, anyway, as the functional equivalent of a notice of appeal. With some regret, we conclude that the temptation must be resisted.

Jurisdiction is a technical subject, appellate jurisdiction perhaps more so than juris-

diction in general. It is important to have bright-line rules in this area, rules that can be easily applied at the early stages of a case to determine with certainty whether our jurisdiction has been properly invoked. If we allow ourselves to search through various documents in our Clerk's office, including even a letter from Fuller's counsel informing us of the lifting of a bankruptcy stay, in order somehow to piece together the various constituent elements necessary to a proper notice of appeal, this purpose will have been largely defeated. The short of it is that no piece of paper styled "notice of appeal" was filed in any court after the judgment of the District Court in this case became final, nor does any such piece of paper even have within it all of the information that a notice of appeal must contain. The Supreme Court has enforced the rules limiting our jurisdiction with uncompromising rigidity. See, in addition to the other cases cited, *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (notice of appeal ineffective as to party appellant not expressly named therein; it is irrelevant that no one was misled).

Fuller also contends, in the alternative, that its November 1990 notice of appeal was sufficient. It argues that an immediate appeal should be allowed from the October judgment because the order created the risk of irreparable harm by immediately shifting title to property. Fuller relies on *Forgay v. Conrad*, 6 How. 201, 12 L.Ed. 404 (1848) (Taney, C.J.), for this principle. Review is also proper, Fuller claims, because the judgment is an injunction appealable as of right under § 1292(a)(1). Both arguments are ways around the final-judgment rule. Neither is persuasive.

 *Forgay* has come to stand for a narrow hardship exception to the final-judgment rule. When a district court orders an immediate transfer of title to property, irreparable harm is presumed, and the order is appealable—even though a final judgment has yet to be entered in the case. The procedural history makes clear, however, that *Forgay* does not apply to this case. No immediate transfer of title was ever ordered, and a transfer only became imminent a few days before the final judgment was entered in January 1991. The District Court's October 29 judgment was automatically stayed. Fed.R.Civ.P. 62(a). On November 7, Fuller took three actions: it filed a notice of appeal, asked the District Court to allow it to supersede the execution of the October judgment with a bond pending appeal, and asked for an extension of the Rule 62(a) stay while the District Court considered its motion for a bond. That same day Judge Woods extended the temporary stay, which had not yet lapsed, until he ruled on the bond request. On November 9 Falcon Jet filed its timely motion to amend the judgment. Though it could have, Fed.R.Civ.P. 62(b), Falcon Jet did not ask the District Court to stay its October judgment pending a decision on its Rule 59 motion. Throughout November and into December, briefs were filed on the motion for supersedeas. The District Court granted that motion, and gave Fuller until January 2, 1991, to file the bond. The stay remained in effect.

Fuller, however, came to our Court on December 23, asking that we stay Judge Woods's order setting the bond. The bond, Fuller claimed, was excessive. We entered a stay on December 28, in order to consider Fuller's contention with care. Several weeks later after the benefit of briefing, we approved the bond set by the District Court. It was now January 17. We did not, however, dissolve our stay. We gave Fuller until January 28 to file the bond with the District Court. Meanwhile, back in the District Court, the judgment was becoming final. On January 22 Judge Woods denied Falcon Jet's motion to amend and entered the final judgment in this case. Our stay remained in effect. Fuller never filed the bond; it filed the bankruptcy proceeding mentioned above instead.

All this procedural history shows that this case is not a proper *Forgay* appeal. When Fuller filed its notice of appeal in November, there was no pending order requiring immediate execution of the judgment. Compare *Forgay*, 6 How. at 204. Nor was there an imminent date for execution of the judgment at that time. Com-

pare *Minnesota & Ontario Paper Co. v. Swenson Evaporator Co.*, 281 F. 622, 625 (8th Cir.1922) (Trieber, District Judge). There was, instead, stay upon stay in this case. We agree with Fuller, and Faysound concedes, that the availability of a supersedeas bond pending the appeal does not answer whether *Forgay* applies. See, *e.g.*, *Swenson Evaporator*, 281 F. at 623. *Forgay*, however, does not apply because, until our order of January 17, transfer of title was not imminent. At that point Fuller might have had a good argument for a *Forgay* appeal. Whatever the possibilities for that strategy, however, they evaporated on January 22 when the District Court denied Falcon Jet's motion and entered final judgment. (Even then our stay remained in effect for six more days.) Any notice of appeal filed after that date would not have needed a *Forgay* crutch: this case had been concluded in the District Court, and it could have come to us as a whole.

■ In sum, *Forgay* does not help Fuller cure the jurisdictional defect in its appeal. When its notice of appeal was filed, and indeed until a few days before final judgment was entered, there simply was no threat of an immediate or imminent transfer of title to the Falcon Jet. Nor can the District Court's October judgment be transformed into an injunction by calling it one. We decline Fuller's invitation to flood that legal category by naming all orders which determine title to property "injunctions."

■ Fuller also argues that extraordinary circumstances justify this Court in taking jurisdiction. This is Fuller's last line of defense. Fuller raises two facts that supposedly make this case unique enough to overcome its Rule 4 problem: the parties and the Court have interacted for several months on the mistaken assumption that jurisdiction existed, and second, Fuller did not receive notice (as required by Fed.R.Civ.P. 77(d)) of the District Court's order denying Falcon Jet's motion to amend the judgment. The Supreme Court has held that an untimely appeal will be allowed on the ground of unique circumstances "only where a party has performed an act, which, if properly done, would post-

pone the deadline for filing his appeal and has received specific assurance by a judicial officer that the act has been properly done." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179, 109 S.Ct. 987, 993, 103 L.Ed.2d 146 (1989); see also *McKee v. Bi-State Development Agency*, 801 F.2d 1014, 1018 (8th Cir.1986). Neither of the circumstances Fuller relies on meets this standard. It alleges no act that, but for a judicially sanctioned error, would have produced a properly noticed appeal.

■ We accept Fuller's counsel's statement that it received no notice of the entry of the District Court's order denying Falcon Jet's post-judgment motion under Rule 59(e). In the abstract, this circumstance creates a strong equity in Fuller's favor. The difficulty is that the express words of Fed.R.Civ.P. 77(d) foreclose this argument. Under that provision as presently in effect, the failure of counsel to receive notice is simply immaterial. Fuller points out that under new Fed.R.App.P. 4(a)(6), to become effective December 1, 1991, absent contrary action by Congress, this result will be changed. The fact that the rule will be amended in the future in such a way as to avoid the unfair result which is occurring in this case, however, is not helpful. Obviously the Supreme Court believes that Rule 77(d), in its present form, can produce unjust results. We have no reason to believe that Congress will interfere with this decision. But the rules are legislative in character. Changes normally do not apply retroactively. Certainly a change which has not yet taken effect (and which, conceivably, may never take effect) cannot be the basis of decision in the present case.

Finally, Fuller suggests that we have power under Fed.R.Civ.P. 60(a) "to correct the clerical mistake in the appellate record...." Appellant's Response to Appellee's Motion to Dismiss Appeal for Lack of Jurisdiction, pp. 18–19. Fuller asks us to "deem" the January 22, 1991, order to have been entered as of May 16, 1991, when Fuller first became aware of it. We should then, Fuller says, allow the filing of an additional notice of appeal. This is only another way of saying, in different words,

that Fed.R.Civ.P. 77(d) should be ignored, and that the failure of Fuller's counsel to receive notice of the January order should be allowed to save this appeal. Such action would be contrary to the plain words of Rule 77, and we have no authority to take it.[3]

\* \* \* \* \* \*

The "mandatory and jurisdictional" requirement that an appellant file a timely notice of appeal can operate harshly. *United States v. Robinson*, 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960). It does so in this case. As surely as we must hear and decide cases within our power, however, we must not decide cases beyond our reach. We are obliged to dismiss this appeal for lack of jurisdiction.

Dismissed.

**3.** On May 23, 1991, Fuller filed a motion in the District Court under Fed.R.Civ.P. 60(b), asking that Court to have the January order "deemed entered on May 16, 1991 due to the lack of notice thereof to Fuller...." At the oral argument on this appeal, Fuller advised us that it had argued to the District Court that that Court had power to rule on this motion before we decide the question of our jurisdiction. Faysound noted that it had requested the District Court not to rule on this motion until we had decided the jurisdictional question. Later, Fuller advised us of the filing of a second Rule 60(b) motion in the District Court, this motion questioning the subject-matter jurisdiction of the federal courts over the entire case. In these papers Fuller argued that though the District Court has power to deny either motion before we rule, before it could grant a Rule 60(b) motion and dismiss the case, we would have to remand the case. That is a correct statement of the law. No motion to remand has been filed.