**In re Doris HOFMANN, Debtor.**

**Ricky J. Poole, as next friend of Doris Hofmann and John Hofmann, Plaintiffs,**

**v.**

**Money Mortgage Corporation of America and Facelift Remodelers, Inc., Defendants.**

**Bankruptcy No. 99–51636.
Adversary No. 00–05016–C.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

April 14, 2000.

MEMORANDUM DECISION AND ORDER
DENYING PLAINTIFF'S MOTION
FOR COST AND EXPENSES

LEIF M. CLARK, Bankruptcy Judge.

**CAME ON** for consideration the Motion for Cost and Expenses filed by the plain-

tiff, Ricky J. Poole as next friend for Doris Hofmann and John Hofmann. After considering the moving papers and based on the court's own research, the court issues this Memorandum Decision and Order denying the plaintiff's Motion for Costs and Expenses.

## BACKGROUND

This case has a somewhat confusing procedural background. Doris Hofmann is mentally incompetent. Ricky Poole was appointed by a state court as next friend, to act on her behalf. Prior to that appointment, Doris Hofmann had filed bankruptcy in 1998. In that bankruptcy case, her attorney filed (on her behalf), a lawsuit to invalidate the lien of Money Mortgage on her homestead. However, the lawsuit was never pursued (due apparently to the failings of her counsel). The bankruptcy case was dismissed. Doris Hofmann filed another bankruptcy in 1999, this time under Chapter 7 of the Bankruptcy Code.

On September 9, 1999, Poole (acting on behalf of Doris Hofmann), filed a lawsuit in state court against Money Mortgage and Facelift Remodelers.[1] The bankruptcy case was still open when this state court lawsuit was filed, and it was still open when the defendant Money Mortgage was served (on September 13, 1999). Howev-

er, it was *closed* the very next day (September 14, 1999).[2]

Poole moved to reopen this bankruptcy case on November 11, 1999. The court entered an order on November 14, 1999, reopening the case, before the ten-day period for responding to the motion had expired. The defendants in fact *did* respond timely (on November 18, 1999), and the court set that response for hearing on January 11, 2000. However, the defendants were not aware that the court had already entered an order granting the plaintiff's motion to reopen.[3]

On January 11, 2000, defendants first learned that an order reopening the case had already been filed. The court heard the defendants response (treating it as a motion to reconsider), but denied the relief, keeping the bankruptcy case open. On January 20, 2000, the defendants filed a notice of removal in the state court action, moving the lawsuit to this court. On January 25, 2000, the plaintiff filed a Motion to Remand. On February 9, 2000, after a hearing, this court issued a Memorandum Decision and Order finding that subject matter jurisdiction over the state court lawsuit was questionable, that notice of removal was untimely filed, and that the equities of the case supported remand under 28 U.S.C. § 1452. Thereafter, the

---

**1.** The case was filed during the pendency of the bankruptcy case but the cause of action was never listed as an asset in the debtor's bankruptcy schedules. The lawsuit alleged that Money Mortgage's lien was invalid on numerous grounds, including fraud, duress, mental incompetence, usury, and failure to make proper disclosures as required by state and federal law. The suit also charged Facelift Remodelers with fraud in obtaining the remodeling work from the debtor and her son, and with violations of the Texas Deceptive Trade Practices Act.

**2.** The case appeared to be a "no-asset" chapter 7, and such cases are usually closed quickly because there are no assets to distribute (and so nothing further for the trustee to do).

**3.** Motions to reopen are normally (though not exclusively) filed by trustees or debtors. The practice of the court is to serve a copy of the

order granting such motions on the party who filed the motion (here, the debtor by way of her next friend, Poole) and on the chapter 7 trustee. Creditors and other parties in interest would thus not normally have received a copy of the order granting the relief. Of course, parties are expected to monitor the docket in a case, and to take such action as they deem appropriate. *Cf.* FED.R.BANKR.P. 9022(a) (parties not relieved from time to file notices of appeal by clerk's failure to serve notice of entry of order). *See Faysound Limited v. Falcon Jet Corp.,* 940 F.2d 339, 344 (8th Cir.1991), *cert. den.,* 502 U.S. 1096, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992); *Witty v. Dukakis,* 3 F.3d 517, 520 (1st Cir.1993) (parties are not permitted to rely on clerk's office to do their homework for them); *Delaney v. Alexander (In re Delaney),* 29 F.3d 516, 518 (9th Cir.1994) (parties required to independently monitor the docket to determine whether an order has been entered).

plaintiff filed this Motion for Cost and Expenses incurred as a result of Money Mortgage's alleged improper removal of the state court case to the bankruptcy court.

### ANALYSIS

The plaintiff relies on 28 U.S.C. § 1447(c) and the Fifth Circuit's decisions in *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290 (5th Cir.2000), *Avitts v. Amoco Production Co.*, 111 F.3d 30 (5th Cir.1997) and *Miranti v. Lee*, 3 F.3d 925 (5th Cir. 1993) as the basis for awarding the plaintiff costs and expenses incurred in the removal proceeding. Section 1447(c) provides in pertinent part, "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The plaintiff argues that Money Mortgage's removal of this case was improper, justifying an award of costs and expenses, including attorney's fees to plaintiff.

▇ Section 1447(c) indeed grants a court discretion to award costs and expenses incurred in opposing an improper removal. *See* 28 U.S.C. § 1447(c); *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290 (5th Cir.2000). However, § 1447(c) applies to actions removed pursuant to § 1441—the general removal statute applicable to ordinary state court lawsuits sought to be removed to federal district court. This action was not removed under that general statute. It was removed pursuant to the more specialized bankruptcy removal statute. 28 U.S.C. § 1452.

Section 1447(c) does not apply to removals under § 1452. Bankruptcy removal has its own independent scheme—its own standard for accomplishing removal, its own procedural rules, its own removal mechanism. *See* 28 U.S.C. § 1452; FED.

R.BANKR.P. 9027. The general removal statute and its processes, while well-suited for discrete litigation, are not designed to handle the unique demands of the bankruptcy process. Section 1447(c) functions appropriately as a deterrent to improper removal in the context of ordinary litigation. Its deterrent function is less appropriate when applied in the specialized context of bankruptcy.

▇ The case law supports this conclusion. In *Matter of Cathedral of the Incarnation in the Diocese of Long Island*, 99 F.3d 66 (2nd Cir.1996), the Second Circuit held (in the context of reviewability of remand orders in bankruptcy) that the removal provisions of sections 1447(c) and (d) did not apply because the case was governed by § 1452.[4] *Id.* at 68; *In re Boyer*, 108 B.R. 19, 23–25 (Bankr.N.D.N.Y. 1988) (holding that a claim or cause of action related to a bankruptcy case is governed substantively by 28 U.S.C. § 1452 and procedurally by FED.R.BANKR.P. 9027). *See also In re Federal Savings & Loan Insurance Corporation*, 837 F.2d 432, 436 (11th Cir.1988) (stating that section 1447(c)'s application is limited to cases removed from state court pursuant to section 1441(a)). *But see Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321 (10th Cir. 1994). The *Cathedral* court concluded, as have we, that the provisions of § 1447(c) and § 1452 are separate and distinct. The "improper removal" sanctions of § 1447(c), as we have noted, are appropriate for ordinary lawsuits. However, the provision's intended chilling effects are not appropriate in the bankruptcy context. Section 1452 (unlike section 1441) does not set standards for invoking removal in bankruptcy cases. Removal in bankruptcy is intended to be virtually automatic. *See* 11 U.S.C. § 1452(a). The complement to this

---

4. The court noted that the remand standards of the two sections are quite different. For example, section 1447(c), a part of the general removal statute governing "any case removed from a State court", permits remand by reason of lack of jurisdiction or a "defect in removal procedure." In contrast, § 1452(b), which applies only to remands by reason of the bankruptcy jurisdiction provided by 28 U.S.C. § 1334, permits remand "on any equitable ground." *Id.* at 68.

more generous removal standard is § 1452(b), which employs more generous equity standards rather than technical requirements to govern whether removed cases should be retained or remanded. Given this more generous, equitable approach, it is difficult to identify any set of facts that might render a bankruptcy removal "improper"—certainly the statute itself gives no hint that bankruptcy removal could *ever* be improper. Enforcement mechanisms such as sanctions are simply not applicable to bankruptcy removal, which is ruled by principles of equity.[5]

■■■■ In any event, even if § 1447(c) were applicable, the unique facts of this case do not weigh in favor of an award of costs and expenses. An award of costs and expenses is within the sound discretion of the court. *See Valdes v. Wal–Mart.Stores, Inc.,* 199 F.3d 290, 292 (5th Cir.2000). The court should not consider the motive of the removing defendant but rather whether the defendant had "objectively reasonable" grounds to believe that removal was legally proper at the time of removal. *Id.* at 292–293. *See also Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993). This "objectively reasonable" determination requires an examination of the removing party's actions based on an objective view of the legal and factual elements in each particular case. *See Valdes,* 199 F.3d at 293. The legal and factual elements present in this case *do not* support an award of costs and expenses. Although we ultimately rejected its arguments, we think the defendant had "objectively reasonable"· grounds to believe that removal was proper. First, the decision whether to remand this case turned in part on the timeliness of the defendant's removal, which on the unique

facts of this case turned out to be a matter of first impression. Second, it was "objectively reasonable" for the defendant to interpret the state court lawsuit as essentially a suit to invalidate a lien under 28 U.S.C. § 157(b)(2)(k). Third, our decision to remand the case on equitable grounds supports the "objective reasonableness" of the removal because it would be almost impossible for a defendant to anticipate equitable grounds the court will consider in remanding a case.

### CONCLUSION

Based on the foregoing, the court concludes that the plaintiff's Motion for Costs and Expenses should be denied.

So ORDERED.

---

5. This case is governed substantively by 28 U.S.C. § 1452 and procedurally by FED. R.BANKR.P. 9027, which do not provide for an award of cost and expenses incurred in removal. However, the party who successfully opposes removal is not necessarily left without remedy. A removal petition, like any signed pleading, might violate FED.R.BANKR.P. 9011, subjecting the signor to sanctions under that rule. However, sanctions under Rule 9011 are imposed under a more stringent standard—much higher than simply whether removal was "improper". This court continues to adhere to its view that a removal petition is subject to Rule 9011. *See In re A.S.M.,* 110 B.R. 802, 807 (Bankr.W.D.Tex.1990). However, the plaintiffs did not seek a Rule 9011 sanction in this case, and we do not here address whether that Rule would apply in this case.