## GOLDEN EAGLE DISTRIBUTING CORPORATION, Plaintiff-Appellee,

### v.

## BURROUGHS CORPORATION, Defendant,

### and

### Appeal of KIRKLAND & ELLIS.

### No. 84–2602.

United States Court of Appeals, Ninth Circuit.

Feb. 3, 1987.

Morrison & Foerster, James J. Brosnahan, San Francisco, Cal., for appellant.

Perez, McNabb & Cook, Jeffrey Alan Miller, Orinda, Cal., for plaintiff-appellee.

NOONAN, Circuit Judge, with whom SNEED, ANDERSON, HALL, and KOZINSKI, Circuit Judges, join dissenting from the denial of a sua sponte request for en banc hearing:

This case is not ordinary in the attention with which it has been watched by the profession. Judge Schwarzer has written a leading article on Rule 11, "Sanctions Under the New Federal Rule 11—A Closer Look," 104 F.R.D. 181 (1985). Beyond the normal respect to be accorded the actions of a district judge, acknowledgment is owed to a pioneer authority on the Rule. We should also take into account that dis-

trict courts, more than appellate courts, are plagued by misrepresentations. We face them on occasion, but common report has it that some trial lawyers are much less scrupulous with trial judges, who do not have the staff or time an appellate tribunal has to unmask misrepresentation. When an outstanding district judge has said, "Enough. I'll deal with misrepresentation under Rule 11," this court should at least have responded to what he has actually done.

Denial of rehearing en banc does not foreclose the opportunity to point out where the opinion distorts what the district court did, to underline certain difficulties the opinion creates, and finally to point out alternative avenues that the opinion does not cut off.

## I. Distortions

*First.* The opinion imposes upon the analysis of Judge Schwarzer a new and different framework. The term "argument-identification" is coined by the opinion and presented as what Judge Schwarzer was seeking. 801 F.2d 1531, 1539–40. A distinction is made between the merits of the case and its manner of presentation by Kirkland, Ellis. *Id.,* p. 1539. The misrepresentation of Kirkland, Ellis are palliated because a brief could have been written without misrepresentations. *Id.,* p. 1535. The opinion so substantially recasts the case that Judge Schwarzer's reasons and action are obscured.

The opinion is mistaken in its analysis of the action of the district court. The opinion says that the district judge sanctioned the Kirkland, Ellis brief after the judge had "looked not to the merits of the position originally taken by the plaintiff, but to the manner in which the position was advocated." *Id.,* p. 1535. But this account does not do justice to the district judge. The district judge had in front of him a brief which did three things. The brief flatly misrepresented Minnesota law as having definitively decided the issue of *forum non conveniens* in a way favorable to the defendant. The brief insinuated that federal

law on the same issue was definitively established the way the defendant would have liked. The brief set out California law without qualification and without mention of later authority which for purposes of the present opinion is assumed to have been "directly contrary." The court sanctioned Kirkland, Ellis for these three statements of law, each of which was not "warranted." The truth or falsity of a statement is not merely a matter of "the manner" in which a position is presented. A false statement presented as a true statement is simply a misstatement. It is not warranted. It should be sanctionable.

*Second.* The opinion substitutes extreme hypotheticals for the case at hand. It imagines close cases where a judge might sanction a lawyer because the judge disagrees with his argument. *Id.,* p. 1540. But close cases exist that test the workability of any rule, civil or criminal. They are not a reason for repealing the rule. Here, on the opinion's own admission, the case was not close. Kirkland, Ellis failed to cite "directly contrary" authority.

*Third.* The opinion exaggerates the effect of Rule 11 as understood by Judge Schwarzer. The opinion says that according to his decision judges would have to "grade accuracy of advocacy in connection with every piece of paper filed in federal court." *Id.,* p. 1540. His decision, the opinion says, imposes upon the district courts "the burden of evaluating under ethical standards the accuracy of all lawyers' arguments." *Id.,* p. 1542. What the opinion does not acknowledge is that, as the sanctions of Rule 11 are mandatory, the burden already exists to "grade" or "evaluate" every piece of paper filed in federal court. Of course most of the time a judge does so only at the urging of a party; if a party does not object, a judge is not likely to be impelled to act even though Rule 11 is mandatory and the burden of evaluation is present. The difference between the opinion and Judge Schwarzer is not over how often the judge's duty to evaluate will in fact be exercised. The difference is that

the opinion would have the judge able to evaluate only the frivolity of a paper; Judge Schwarzer would let the judge also impose sanctions for misrepresentation.

## II.  Difficulties

*First.*  The opinion contradicts Rule 11. Rule 11 requires that a lawyer certify that what he files with the court is "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."  In this case what Kirkland, Ellis had filed was a brief arguing for summary judgment because of the law of California, applicable under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  The opinion assumes that the California cases which Kirkland, Ellis failed to cite were "directly contrary" to the argument it was making.  P. 1536. But the opinion concludes that Kirkland, Ellis' failure was not a violation of Rule 11. *Id.*, p. 1542.

How can a brief be warranted by existing law if its argument goes in the face of "directly contrary" authority from the highest court of the jurisdiction whose law is being argued?  How can a brief be warranted to be "a good faith argument for the extension, modification, or reversal of existing law" when there is not the slightest indication that the brief is arguing for extension, modification or reversal?

To ask these questions is to answer them.  An argument in the teeth of uncited and undistinguished contrary authority is not warranted by existing law.  An argument that does not mention directly-contrary authority is not a good faith argument for its modification or reversal.  The opinion contradicts the Rule.  The opinion repeals the Rule's requirement that a brief be warranted by existing law or a good faith argument for the law's amendment or reversal.

The opinion puts the question as one of "argument identification," treating Kirkland, Ellis' failure as a failure to identify correctly its argument as one for extension of existing law.  *Id.*, pp. 1539–40.  But Kirkland, Ellis' failure was far greater.

Kirkland, Ellis made no argument at all for extending existing law.  It simply misrepresented the law it cited.

*Second.*  The opinion eliminates significant language from Rule 11.  Not only does the opinion appear to exempt a whole class of legal papers from the operation of the Rule, it excises a key phrase from the Rule.  The Rule requires that the lawyer certify that the pleading is "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  The opinion restricts the Rule to a prohibition of frivolous pleadings.  *Id.*, p. 1540.  Doing so the opinion uses a term—"frivolous"— not to be found in the Rule.

In its history of the Rule, the opinion treats as exhaustive what the Rule introduces with the words "such as" as merely exemplary—the purposes of harassment, delay, or needless expense.  *See Id.*, p. 1537.  Obviously the Rule means to punish these improper purposes.  But there would be no point to the Rule listing them by way of example if the Rule were restricted to punishing only them.  The Rule mandates sanctions for any legal papers filed in federal court with *any* improper purpose. The opinion reads "any" out of the Rule.

The opinion fails to recognize that untruthful briefs are subject to sanctions under Rule 11.  Eliminating from the Rule its condemnation of *any* improper purpose, the opinion treats as mere "salutary admonitions" Judge Schwarzer's requirement that a brief be, to the best of a lawyer's ability, truthful.  Doing so, the opinion fails to acknowledge that to mislead the court is an improper purpose.  An untruthful brief is, objectively, a brief whose purpose is to mislead the court.  It is subject to sanctions under Rule 11.

A lawyer's signature on a paper filed in court is described by Rule 11 as "a certificate."  What is a certificate?  It is "a signed, written, or printed testimony to the truth of something."  *Webster's Third New International Dictionary*, Meaning 1. Without focusing on the term "certificate,"

the opinion itself appears to agree with this definition. The opinion says that the signatory attorney "warrants." *Id.*, p. 1536. "Warrants" is a verb meaning "to assure a person of the truth of what is said." *Webster's,* Meaning 2b.

How can a lawyer offer testimony to the truth of what he has filed, how can he assure a person of its truth, if it is a misrepresentation?

*Third.* The opinion is one-sided in its use of authority on the purpose of Rule 11. The opinion ignores these statements by Arthur Miller, the principal draftsman of Rule 11:

We have lived so long with the emphasis on "duty to client" that redirecting the responsibilities of lawyers to the system is easier said than done. Yet once it is understood that the court system is a societal resource, not merely the private playpen of the litigants, the difficult task of discouraging hyperactivity must be undertaken.

The 1983 amendments to the Federal Rules of Civil Procedure represent a modest step in that direction. They attempt to check abuses by requiring an attorney's signature on all litigation papers—pleadings, motions, and discovery requests and responses—certifying that, based on "reasonable inquiry," there is good ground to support the document and the signer's motivation is not improper. The message is clear. An attorney must "stop and think" before acting—that is the litigator's duty to the system—or be subjected to sanctions....

Miller, "The Adversary System: Dinosaur or Phoenix", 69 *Minn.L.Rev.* 1, 19 and 21 (1984).

The opinion ignores this summary of Rule 11 applications by an authoritative treatise:

Conversely, sanctions have been deemed appropriate *in a wide range* of circumstances because the pleadings or motions filed have been deemed frivolous *or made without sufficient inquiry.* Wright-Miller-Kane, *Federal Practice and Procedure* (1986 Supp.) sec. 1333 (emphasis supplied).

The opinion ignores relevant portions of the statement of the purpose of the 1983 amendment made by the Advisory Committee on Rules:

The new language is intended to reduce the reluctance of courts to impose sanctions, see Moore, *Federal Practice* ¶ 7.05 at 1547, by emphasizing the *responsibilities* of the attorney and reenforcing *those obligations* by the imposition of sanctions ... (emphasis supplied).

The expanded nature of the lawyer's certification in the fifth sentence of amended Rule 11 recognizes that the litigation process may be abused *for purposes other than delay* (emphasis supplied).

The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy *the affirmative duty imposed by the rule....* This standard is more stringent than the original good-faith formula and *thus it is expected that a greater range of circumstances* will trigger its violation (emphasis supplied.)

Contrary to Miller, the court continues the emphasis on duty to client. Contrary to Wright, Miller, and Kane, the opinion restricts Rule 11 to a single circumstance, frivolousness. Contrary to the Advisory Committee, the opinion imposes only a negative duty not to be frivolous.

*Fourth.* Instead of acknowledging the violation of Rule 11 when a lawyer attempts by brief to mislead the court, the opinion specifically rejects the district court's statement that under Rule 11 a lawyer "must not misstate the law." P. 1539. The opinion goes on to cite with apparent approval the view of the American Bar Association's Litigation Section that "the practicing bar" sees vigorous advocacy "seemingly without regard to its possible misrepresentations to the court" as the mark of "justified representation of the client." *Id.*, p. 1540, n. 4.

This vision of vigorous advocacy "seemingly" indifferent to misrepresentations is

cited by the opinion as "understandable" concern by the bar that vigorous advocacy not be chilled. Identification of vigorous advocacy with indifference to misrepresentation reflects a one-sided view. It is a view that has been repudiated by modern legal ethics. There is no reason to revive the old, discredited view, much less to incorporate the old view into an interpretation of Rule 11. Vigorous advocacy is, necessarily, truthful advocacy.

A distinct shift from the old view was made in a report by the Joint Conference on Professional Responsibility established by the American Bar Association and the Association of American Law Schools. "Confronted by the layman's charge" that the lawyer is "nothing but a hired brain and voice," this committee undertook to set out the duties of lawyers in terms of social functions that made the lawyer's role understandable, acceptable, and even necessary. *See* Introductory Statement of Co-chairmen Lon L. Fuller and John D. Randall, "Professional Responsibility: Report of the Joint Conference," 44 *ABA Journal* 1159 (1958). The report, in large measure, reflected the jurisprudence, the insights, and the wisdom of Professor Fuller. The report stressed that "the integrity of the adjudicative process itself" depends upon the participation of the advocate in order to hold in suspense the mind of the judge, prevent premature closure of the judge's mind, and make a wise decision possible. The function of the advocate defined his responsibilities and the limits of advocacy. The report concluded that a lawyer whose "desire to win leads him to muddy the headwaters of decision" and who "distorts and obscures" the true nature of a case "trespasses against the obligations of professional responsibility." *Id.* at 1161.

Modern codes of ethics have followed this line of thought. The American Bar Association's *Model Code of Professional Responsibility* invoked the report of the Joint Conference in stating that a lawyer today "stands in special need of a clear understanding of his obligations and of the vital connection between these obligations and the role his profession plays in society." Preamble, fn. 3, ABA *Model Code of Professional Responsibility* (1974). The first disciplinary rule of the Code is that "a lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." DR 1–102(A)(4). The Disciplinary Rule does not distinguish misrepresentation of fact and misrepresentation of law.

More specifically, under the general heading, "Representing a Client Zealously", the Model Code provides that a lawyer "shall not ... knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law." DR 7–102(A)(2). Ethical Consideration 7–23 in the same Code declares, "Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so ...." EC 7–23.

The standards of the Model Code are substantially followed in the Model Rules of Professional Conduct of the American Bar Association. Rule 3.3 under the heading, "Candor Toward the Tribunal" makes it a black letter rule that a lawyer should not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly diverse to the position of the client and not disclosed by opposing counsel." Model Rules 3.3(a)(3). The note on this Rule goes on to say, "Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal ... The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case."

In black letters the Model Rules also provide, "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein unless there is a basis for doing so that is not frivolous, which in-

cludes a good faith argument for an extension, modification, or reversal of existing law." Model Rule 3.1. Commentary on this Rule explicitly links it to DR 7–102(A)(2) of the Model Code.

Amazingly, the opinion of the court fails to acknowledge the source for the language of Rule 11 that a paper should be "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Both the ABA's Model Rules, adopted on August 2, 1983, and Rule 11, which became effective August 1, 1983, are properly seen as based on DR 7–102(A)(2) of the Model Code in their treatment of what a lawyer should not do. If the objective standard of Rule 11 is higher than the subjective standard of Model Rule 3.3, that is no reason for the court to ignore the link between Rule 11 and the ethical standards of the bar.

It is equally surprising that the opinion of the court does not acknowledge that in the ABA's Model Rules, frivolousness is specifically defined by the absence of "a good faith argument for an extension, modification or reversal of existing law." Frivolousness does not only consist, as the court appears to assume, in making a baseless claim. Frivolousness also consists in making a legal argument without a good faith foundation.

*Fifth.* Not only does the opinion suggest a view of unrestrained advocacy repudiated by modern authorities, it favors a type of analysis sponsored by the Eighth Circuit and overruled by the Supreme Court. The opinion takes the position that a requirement of truthful argumentation "tends to create a conflict between the lawyer's duty zealously to represent his client" and "the lawyer's own interest in avoiding rebuke." P. 1540.

Precisely such an analysis was offered by the Eighth Circuit in relieving the lawyer of an obligation not to present perjury. That court found "a conflict of interest" between the lawyer's duty to represent his client zealously and the lawyer's ethical duty not to present perjury. *Whiteside v. Scurr,* 744 F.2d 1323 (8th Cir.1984); *re-*

*hearing en banc denied,* 750 F.2d 713 (8th Cir.1984). Reversing the Eighth Circuit, the Supreme Court noted that there was no conflict of duties when the lawyer was asked by his client to assist "in the presentation of false testimony." *Nix v. Whiteside,* —— U.S. ——, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986).

A client has as little right to the presentation of false arguments as he has to the presentation of false testimony. No conflict exists when a lawyer confines his advocacy by his duty to the court. The opinion is insensitive and unresponsive to the teaching of the Supreme Court that a restraint on the freedom of a lawyer to present falsity as truth does not create any true conflict. The lawyer has a duty to work within the boundaries of professional responsibility. He is not free to suborn testimony, to perjure himself, to offer perjured testimony, or to misrepresent facts or law. No conflict exists between his duty to work within these restraints and his duty to his client. The opinion suggests that there is the possibility of conflict over a duty to serve a client and a duty not to misrepresent the law. Fidelity to the relevant opinion of the Supreme Court and to the modern standards of the profession lead to a different conclusion.

### III. Alternative Avenues

The opinion, in its penultimate phase concedes that a lawyer "should not be able to proceed with impunity in real or feigned ignorance of authorities which render his argument meritless," and the opinion acknowledges that "Rule 11 is not the only tool available to judges in imposing sanctions on lawyers." P. 1542. There are, the opinion observes, other "well-established bar and court ethical proceedings." *Id.* The court's opinion is confined to the meaning of Rule 11 as it will henceforth be understood in the Ninth Circuit. The court did not address, and could not have addressed except by non-binding dicta, the other rules governing practice in the federal courts.

The General Rules of the United States District Court for the Northern District of California, Rule 110–3, prescribe:

Every member of the bar of this court and any attorney permitted to practice in this court under Local rule 110–2 shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto; maintain the respect due courts of justice and judicial officers; perform with the honesty, care, and decorum required for the fair and efficient administration of justice; discharge the obligations owed to his clients and to the judges of the court.

A lawyer who misrepresents the law has failed to discharge the obligations owed to the judges of the court. He is subject to sanctions under General Rules 110–6 and 110–7. The difference between those sanctions and the sanctions now made inapplicable by the court is that under Rule 11 the sanctions are mandatory; under the rules of the district court, the sanctions are to be imposed in the sound discretion of the district judge. That discretion can be exercised in this case and in others that will arise.

Apart from explicit rules, a federal court has inherent power to award sanctions including counsel fees against a lawyer who has acted in bad faith. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). Bad faith may be found not only in the actions that led to the law suit, "but also in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973). It is apparent that when there is an absence of good faith in the presentation of an argument there will be bad faith on the part of the lawyer making the argument. The lawyer is open to sanction under the inherent power of the court.

Where a court has applied sanctions on a basis which is subsequently held to be mis-

taken, and the case is remanded, the court retains the power to award sanctions on a proper basis, such as the inherent power of the court to sanction the bad faith of counsel. *Roadway Express, Inc. v. Piper*, 447 U.S. at 767, 100 S.Ct. at 2464.