# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REQUEST FOR EN BANC HEARING

### NO. 03-05-00585-CR
### NO. 03-05-00586-CR

**Ex parte James W. Ellis**

### NO. 03-05-00589-CR
### NO. 03-05-00590-CR
### NO. 03-05-00591-CR
### NO. 03-05-00592-CR
### NO. 03-05-00593-CR
### NO. 03-05-00594-CR
### NO. 03-05-00595-CR
### NO. 03-05-00596-CR
### NO. 03-05-00597-CR
### NO. 03-05-00598-CR
### NO. 03-05-00599-CR
### NO. 03-05-00600-CR
### NO. 03-05-00601-CR
### NO. 03-05-00602-CR
### NO. 03-05-00603-CR

**Ex parte John Dominick Colyandro**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. 9040564, 9040565, 9040566, 9040567, 9040568, 9040569, 9040570, 9040571, 9040572, 9040573, 9040574, 9040575, 9040576, 9040577, 9040598, D-1-DC-2005-904121, & D-1-DC-2005-904122
HONORABLE BOB PERKINS, JUDGE PRESIDING**

## DISSENTING OPINION

Given the troubling procedural history of this case, I dissent from this Court's decision not to hear the case en banc. The Texas Rules of Appellate Procedure allow a justice of the court of appeals to request a vote to determine whether a case will be heard en banc. *See* Tex. R. App. P. 41.2(c). In the present case, a vote was requested before the panel's opinion was issued, and a majority of the court's members voted against hearing the case en banc. "Any justice on the court may file an opinion in connection with a denial of a hearing . . . en banc." Tex. R. App. P. 47.5; *see also O'Connor v. First Court of Appeals*, 837 S.W.2d 94, 95 (Tex. 1992) (holding that "a court of appeals has a duty to allow a nonpanel justice to file a dissent from the court's denial of a motion for en banc consideration"). "[T]he prospect of a dissenting opinion by a nonpanel member of the court of appeals 'heightens the opinion writer's incentive to get it right.'" *O'Connor*, 837 S.W.2d at 96 (citing Ruth Bader Ginsburg, *Remarks on Writing Separately*, 65 Wash. L. Rev. 133, 144 (1990)). "Denial of rehearing en banc does not foreclose the opportunity to point out where the opinion distorts what the district court did, to underline certain difficulties the opinion creates, and finally to point out alternative avenues that the opinion does not cut off." *O'Connor*, 837 S.W.2d at 96-97 (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 809 F.2d 584, 585 (9th Cir. 1987)).

In a case where the panel has been unable to resolve pretrial proceedings in this accelerated case in even a remotely reasonable period of time, effectively tying the hands of the prosecution for several years and delaying the resolution of charges of public corruption that undermine the very core of our political system, the need for en banc review is evident. The panel

2

has ignored the clear mandate of Texas Rule of Appellate Procedure 31.2, which states, "An appeal in a habeas corpus or bail proceeding will be heard *at the earliest practicable time*." Tex. R. App. P. 31.2 (emphasis added). The rule further states, "The sole purpose of the appeal is to do substantial justice to the parties." *Id.* In the present case, a delay of over two years has precluded substantial justice to the parties, resulting in what can only be described as a de-accelerated appeal. The notices of appeal for these pretrial proceedings were filed in September 2005, the parties' briefs were filed by January 2006, and oral arguments were heard in August 2006. The delay between oral argument and the issuance of the panel's opinion suggests that this case presents legal questions of such magnitude and complexity that en banc review must surely be warranted.[1] Otherwise, the delay remains unjustified, serving only to hamstring the workings of our justice system. While en banc consideration should be used sparingly, it is difficult to fathom when a more appropriate case for en banc review could arise.

Even more troubling than the delay in resolving these pretrial proceedings is the fact that the opinion is overbroad and rife with dicta. By stating, "We are of the opinion that the term 'funds' in the 2002 version of the money laundering statute cannot be fairly read to have tacitly included checks," the panel reaches the merits of an issue that is not properly before this

---

[1] In the two years since oral argument was heard in this case, the current panel members have authored opinions in over 150 cases—most of which were non-accelerated—that were filed *after* the oral argument in the present case, which was filed as an accelerated appeal due to its procedural posture as a pretrial habeas proceeding. By prioritizing non-accelerated cases over the present case, the panel calls into question the consistency of this Court's approach to resolving habeas proceedings as accelerated appeals. En banc review is appropriate when necessary to "maintain uniformity of the court's decisions." Tex. R. App. P. 41.1(c). *See* Third Court of Appeals Released Orders/Opinions, http://www.3rdcoa.courts.state.tx.us/opinions/docketsrch.asp.

3

Court—Ellis and Colyandro's "as applied" challenge to the money laundering statutes. *See, e.g.*, *Ex parte Howard*, 191 S.W.3d 201, 203 (Tex. App.—San Antonio 2005, no pet.) ("A pretrial writ of habeas corpus . . . may not be used to address an 'as applied' challenge to a statute."). Granted, the panel claims to "express no opinion with respect to the viability or resolution of an 'as applied' challenge" to the money laundering statute. However, they proceed to do exactly that, addressing the merits of Ellis and Colyandro's argument, which, no matter how it is labeled, remains an "as applied" challenge.[2] In rejecting the State's contention that Ellis and Colyandro are making an "as-applied" challenge that may not be addressed in this pretrial habeas corpus proceeding, the panel states, "The State's characterization of the Appellants' argument presupposes a particular answer to it—i.e., that the statute should be construed in the manner the State contends and if it is, Ellis and Colyandro's attack can only be mounted as an 'as applied' challenge." What the panel opinion fails to recognize, however, is that Ellis and Colyandro *also* presuppose this particular answer to their vagueness argument, as they concede that the statute is *not* vague if the State's interpretation of the statute is incorrect. According to Ellis and Colyandro, the State's interpretation of the statute must be correct in order for their vagueness challenge to succeed. Therefore, Ellis and Colyandro's vagueness argument remains an "as applied" challenge, albeit in sheep's clothing.

In pretrial habeas corpus proceedings such as these, an "as applied" challenge to the statute is not yet ripe for appellate review because the evidence has not been developed. *See*

---

[2] While the panel repeatedly refers to Ellis and Colyandro's vagueness argument as a facial constitutionality challenge, this Court may not, in its zeal to reach the merits of a case that has not yet been to trial, echo the proclamation of Lewis Carroll's Humpty Dumpty, "When *I* use a word, it means just what I choose it to mean." Carroll, *Through the Looking-Glass* (Great Britain 1871).

4

*Ex parte Manrique*, 40 S.W.3d 552, 554 n.4 (Tex. App.—San Antonio 2001, no pet.) ("No factual record has been developed, therefore, any claim that the statute is unconstitutional as particularly applied to [the appellant] is premature and beyond the scope of the present review."). Therefore, this Court's review must be limited to the *facial* constitutionality of the statutes that the defendants are accused of violating. *See Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001) (holding that, while "habeas corpus is generally not available before trial to test sufficiency of the complaint, information, or indictment," an exception exists when the applicant alleges that the statute is unconstitutional *on its face*). Because the panel refuses to acknowledge that Ellis and Colyandro's argument is in fact an "as applied" challenge and to limit its review accordingly, I believe this case presents the type of "extraordinary circumstances" that merit en banc consideration. Tex. R. App. P. 41.1(c).

In order to sustain a facial constitutionality challenge, Ellis and Colyandro must show that there is no set of circumstances under which the statute would be valid, *United States v. Salerno*, 841 U.S. 739, 745 (1987), by demonstrating that the statute is vague in all of its applications, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745.

Ellis and Colyandro concede that "funds" as used in the 2002 version of the statute plainly includes cash or currency and that therefore the money laundering statute could constitutionally be applied to a person who engages in a transaction involving the cash or cash equivalent proceeds of criminal activity. Because any facial constitutionality challenge to the statute

5

necessarily fails on this basis, the inquiry should end there. The panel, however, proceeds to address the merits of Ellis and Colyandro's claim that the money laundering statute does not include checks, despite the fact that this issue is not only improper in a pretrial proceeding, but wholly irrelevant in light of the fact that Ellis and Colyandro are unable to sustain a proper facial challenge to the statute. Given the panel's refusal to limit itself to the appropriate issues, en banc review is necessary to assist this Court in issuing an opinion that complies with the requirements of appellate review.

Because Ellis and Colyandro's "as applied" challenge is not ripe at this stage of the proceedings, the panel's extensive discussion of whether the 2002 money laundering statute included checks in the definition of "funds" is dicta, at best, and oversteps the boundaries of this Court's authority to review pretrial matters. *See Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005) (stating that appellate courts are "careful to ensure that a pretrial writ is not misused 'to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage'") (citations omitted). The panel, however, has chosen to issue an advisory opinion on the meaning of the word "funds"—a question that this Court need not and should not address at this time. *See Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004) (stating that the separation-of-powers provision, article II, section 1 of the Texas Constitution, forbids advisory opinions).

Unfortunately, the problems do not stop there, since not only has the panel included a staggering amount of dicta in its opinion, but in doing so has applied the reasonable-person standard in a manner that renders this important legal standard devoid of meaning and subject to the whims of the judiciary. For example, the opinion states, "We find that the term 'funds' in the 2002 money laundering statute did not include checks." In *Lee v. State*, 29 S.W.3d 570, 575 (Tex. App.—Dallas 2000, no pet.), however, our sister court found the evidence sufficient to uphold

6

a conviction for money laundering based on a transaction involving a fraudulently obtained check. Therefore, I disagree with the panel's statement that "[i]t is too much of a leap for us to conclude that a reasonable person of ordinary intelligence would look at the 2002 version of section 34.01 and be aware that it intended to criminalize the 'laundering' of checks," because the Dallas Court of Appeals did exactly that in *Lee*. *See id.*; *see also Davis v. State*, 68 S.W.3d 273, 277 (Tex. App.—Dallas 2002, pet. ref'd) (finding that evidence was factually sufficient to uphold conviction where "five checks form[ed] the basis of the money laundering offenses"). En banc review is necessary in this case, if only to clarify that this Court does not consider the Dallas Court of Appeals to fall short of the reasonable-person-of-ordinary-intelligence standard. *See O'Connor*, 837 S.W.2d at 95 ("Unless a court of appeals chooses to hear a case en banc, the decision of a panel constitutes the decision of the whole court.").

While the panel notes that the precise issue of whether checks were considered "funds" under the money laundering statute was not before the court in *Lee* or *Davis* (just as it is not before this Court in the present case), the fact remains that the existence of two published cases by a Texas appellate court, upholding money laundering convictions based on checks, might cause a reasonable person of ordinary intelligence to expect the Texas money laundering statute to criminalize the laundering of checks.[3] To survive a void for vagueness challenge, a statutory

---

[3] The panel also states, "The parties here quite rightly declined to cite, rely on, or brief the *Lee* and *Davis* cases in this case." This statement is not entirely true, however. In the State's "Post-Hearing Brief," filed after oral argument, it states, "In the order denying the appellants' motions to quash the indictments that they share with former Congressman Tom DeLay, Judge Pat Priest concisely articulated why 'funds' includes checks. A copy of the relevant portion of that order is attached hereto as Appendix A." Appendix A to the State's brief includes a discussion of the Texas money laundering statute, including the statement, "The courts of Texas have repeatedly affirmed convictions in cases wherein checks have underlain the transactions," followed by citation to both *Lee* and *Davis*. I read the State's attachment of Appendix A to its brief as an incorporation by reference of the case citations included therein.

provision "need only give fair warning in light of common understanding and practices." *State v. Wofford*, 34 S.W.3d 671, 679 (Tex. App.—Austin 2000, no pet.).

Similarly, the federal money laundering statute, which clearly criminalizes the laundering of checks, further calls into question the panel's conclusion that no reasonable person of ordinary intelligence would interpret former section 34.01 to include checks in the definition of "funds." *See* 18 U.S.C. § 1956(c)(5) (West Supp. 2008) (including "coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders" in definition of "monetary instruments," the laundering of which is prohibited).[4] Federal courts have upheld convictions for money laundering based on activities involving checks, *see, e.g.*, *United States v. Valuck*, 286 F.3d 221, 227-28 (5th Cir. 2002); *United States v. Paramo*, 998 F.2d 1212, 1217-18 (3d Cir. 1993); *United States v. Montoya*, 945 F.2d 1068, 1077 (9th Cir. 1991) (upholding money laundering conviction based on checks related to bribery offenses and other incidents of political corruption), and have interpreted the federal money laundering statute broadly in rejecting constitutional vagueness challenges, *see, e.g.*, *United States v. Akintobi*, 159 F.3d 401, 404-05 (9th Cir. 1998) ("While this particular type of transaction may not fit the common understanding of what is money laundering, the statute reaches a broad range of financial activities"); *United States v. Estacio*, 64 F.3d 477, 480 (9th Cir. 1995); *United States v. Jackson*, 935 F.2d 832, 839 (7th Cir. 1991). While the language of the federal money laundering statute differs from the Texas statute, the very existence of federal law criminalizing the money laundering of checks suggests that it would not be, as the panel believes, "too much of a leap for us to conclude" that a

---

[4] This definition was in effect prior to the 2002 amendment of the Texas money-laundering statute. *See* 18 U.S.C. § 1956(c)(5) (West 2000).

reasonable person might expect such activity to be prohibited by the Texas statute as well. Rather, this body of federal law might indicate to a reasonable person of ordinary intelligence that the Texas statute, which does not limit the definition of "funds" but merely provides a list of non-exclusive examples, might also be interpreted broadly to criminalize money-laundering transactions involving checks in a wide variety of contexts, including political corruption, rather than narrowly applied so that only drug dealers conducting transactions in cash may be convicted of money laundering.

The panel also ignores the plain meaning of the statute in coming to its conclusion that no reasonable person would expect checks to be considered "funds." A statute "must be read in context and construed according to the rules of grammar and common usage." *Ex parte Morales*, 212 S.W.3d 483, 499 (Tex. App.—Austin 2007, pet. ref'd). Section 34.01(2) of the penal code, as it existed in 2002, stated that the term "funds" *includes* the forms of money described in subsections (A), (B), and (C). As the panel acknowledges, we are bound to interpret the word "includes" as a term of enlargement, rather than limitation or exclusive enumeration. *See* Tex. Gov't Code Ann. § 311.005(13) (West 2005). The word "includes" does not create a presumption that components not expressed are excluded. *Id.*

The panel cites treatises and legislative history at length in an attempt to interpret former section 34.01(2) to exclude checks from the definition of "funds." But when attempting to discern legislative intent, we are bound by the literal text of the statute because it is the only definitive evidence of what legislators had in mind when the statute was enacted. *Boykin v. State*,

9

818 S.W.2d 782, 785 (Tex. Crim. App. 1991).[5] We may look beyond the statutory text only if it is ambiguous or if the application of the statute's plain language would lead to an absurd result that the legislature could not possibly have intended. *Id.* "As jurists, we are obliged to implement the expressed will of our legislature, not the will it keeps to itself." *Garcia v. State*, 829 S.W.2d 796, 799 (Tex. Crim. App. 1992). Therefore, "the plain language of a statute, not the legislative history behind it, dictates our interpretation of that statute." *State v. Johnson*, 939 S.W.2d 586, 587 (Tex. Crim. App. 1996).

There is no ambiguity in the legislature's use of "includes" in the definition of "funds." By defining "funds" to "include" cash, the legislature plainly did not define "funds" to mean *only* cash, and neither the statute nor the context compels a different understanding of the definition. *See State v. Vasilas*, 187 S.W.3d 486, 490 (Tex. Crim. App. 2006) (holding that by defining "governmental record" to "includ[e] a court record," legislature plainly did not exclude other documents). Texas appellate courts have repeatedly construed "includes" and "including" as

---

[5] When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. We do this because the text of the statute is the law in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor for her signature. We focus on the literal text also because the text is the only definitive evidence of what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law. There really is no other certain method for determining the collective legislative intent or purpose at some point in the past, even assuming a single intent or purpose was dominant at the time of enactment.

*Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

terms of enlargement, as required by section 311.005(13) of the government code. *See, e.g.*, *Vasilas*, 187 S.W.3d at 488-92; *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); *Grunsfeld v. State*, 843 S.W.2d 521, 525 (Tex. Crim. App. 1992). More importantly, *this* Court has interpreted "includes" and "including" to signify a non-exclusive list. *See H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 567, 603 (Tex. App.—Austin 2000, pet. denied); *Wilburn v. State*, 824 S.W.2d 755, 762 (Tex. App.—Austin 1992, no writ) (holding that where statute states that directors and officers' liability "includes" franchise taxes, legislature did not impliedly intend to exclude all items not listed). The panel deviates from this Court's precedent by interpreting the statute to exclude checks because it "includes" cash and other items without specifically naming checks, using legislative history to interpret a statute that is unambiguous on its face.[6] *See Vasilas*, 187 S.W.3d at 490 ("[T]he word 'including' is unambiguous and the legislature has assigned it a particular meaning of enlargement"). En banc consideration is appropriate when "necessary to secure or maintain uniformity of the court's decisions." Tex. R. App. P. 41.2(c). Therefore, en banc review is warranted in the present case to maintain the uniformity of the court's decisions regarding the proper statutory construction of the term "includes."

---

[6] The panel further relies on legislative history to suggest that the legislature intended the money laundering statute to apply primarily to illegal drug transactions. Without considering whether there might be a constitutional issue involved if the legislature had in fact decided that drug dealers could be prosecuted for money laundering while individuals involved in white-collar crimes could not, we note that chapter 34 of the penal code makes no mention of limiting the money laundering statute to the "illicit drug trade," as the panel suggests. Furthermore, the panel's discussion leads us to the conclusion that, hypothetically, if a drug dealer were to deposit cash proceeds of illicit activity in a bank in Miami and then use a check to deposit these funds in a Texas bank, there would be no recourse to prosecute this individual for money laundering under the penal code in effect in 2002.

Furthermore, the panel applies the *ejusdem generis* canon of construction, stating that a term may "be enlarged only as to items of the same kind, class, or nature as the other items on the list," in concluding (unnecessarily) that the term "funds" in section 34.01 could not possibly include checks. However, in applying this canon, the panel draws a distinction so fine that it takes five pages of the opinion to explain why checks are not "of the same kind, class, or nature" as the other enumerated items. This application of *ejusdem generis* essentially requires the reasonable person of average intelligence to conclude, upon reading the statute, that the listed items (currency, U.S. silver certificates, U.S. Treasury notes, Federal Reserve System notes, foreign bank notes, and foreign bank drafts) are not, in fact, meant to represent those monetary instruments that could potentially constitute the proceeds of criminal activity, but to represent only those forms of payment that are not "contingent on the drawer's order to pay being honored by the drawee at some point in the future." This conclusion stretches the rule of *ejusdem generis* much too far. In its attempt to come up with a "kind, class, or nature" that includes all of the items listed in the pre-2005 statute but excludes checks, the panel simply describes subtle distinctions that bear no relationship to the purpose of the statute and calls them "fundamental differences."

The panel also argues that the legislature's 2005 amendment to section 34.01(2), which added subsection (D), demonstrates that the original definition of "funds" did not include checks. Subsection (D) adds to the list of items included in the meaning of "funds": "currency or its equivalent, including an electronic fund, personal check, bank check, traveler's check, money order, bearer negotiable instrument, bearer investment security, bearer security, or certificate of stock in a form that allows title to pass on delivery." Tex. Penal Code Ann. § 34.01(2)(D)

12

(West Supp. 2007). The panel reasons that the legislature must be presumed to have intended this amendment to change, rather than merely clarify, the meaning of "funds." But subsection (D) includes at least one form of payment, currency, that the panel opinion itself states was included within the original definition. In light of the inclusion of currency, it is clear that subsection (D) both changed *and* clarified the previous definition of funds. With regard to checks, the addition of subsection (D) did not signify a change in the statute, but merely made explicit what was already implicit in the definition of "funds." *See Lee*, 29 S.W.3d at 576 (affirming conviction for money laundering where transaction involved fraudulently obtained check); *see also Lawyers Sur. Corp. v. Royal Chevrolet, Inc.*, 847 S.W.2d 624, 627 (Tex. App.—Texarkana 1993, writ denied) (in holding that statutory term "bank drafts" included checks for purposes of motor vehicle dealers' bonds, stating that "[t]his interpretation is consistent with the *subsequent amendment* to [the statute], which conditions payment of claims on a bond on the purchasing dealer's payment of all valid bank drafts, *including checks*") (emphases added).

In discussing the 2005 amendment to the statute, the panel relies on the general presumption that a legislative amendment signifies a change, rather than a clarification, of the existing statute. "However, the time and circumstances surrounding the enactment of the amendment may indicate that the change wrought by the amendment was formal only—that the legislature intended merely to interpret the original act." 1A Norman J. Singer, *Sutherland Statutory Construction* § 22.30 (6th ed. 2002). If an amendment "was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act." *Id.* § 22.31. As noted in the panel opinion, Ellis and Colyandro

13

were initially indicted in September 2004, and the amendment to section 34.01 was passed by the legislature in 2005. The fact that the money laundering statute was amended in the very first legislative session after Ellis and Colyandro's indictment suggests that the 2005 amendment "was adopted for the purpose of making plain what the legislation had been all along from the time of the statute's original enactment," *id.*

While I strongly disagree with the panel's reading of section 34.01(2), their discussion of whether checks are considered "funds" under the statute remains pure dicta, as Ellis and Colyandro have failed to establish that the statute is unconstitutionally vague on its face. I would have affirmed the trial court's order denying habeas corpus relief without issuing an advisory opinion that not only reaches the merits of an issue that is not properly before this Court, but ignores the plain meaning of the statute in doing so. In light of these issues, I respectfully dissent from the Court's decision not to afford this case the en banc review that it requires.

_____

Diane M. Henson, Justice

Filed: August 29, 2008

Publish

14