# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

_____

No. 03-6027EA

_____

| | |
|---|---|
| In re: | * |
| | * |
| Charles McAuley Adams, | * |
| | * |
| Debtor. | * |
| | * |
| Charles McAuley Adams, | * |
| | * |
| Debtor-Appellant, | *   Appeal from the United States |
| | *   Bankruptcy Court for the |
| v. | *   Eastern District of Arkansas |
| | * |
| Charles E. "Sketch" Rendlen, III, | * |
| | * |
| U.S. Trustee-Appellee, | * |
| | * |
| First Tennessee National Bank, | * |
| | * |
| Interested Party-Appellee. | * |
| | * |

_____

Submitted: September 23, 2003
Filed: October 7, 2003

_____

Before KRESSEL, Chief Judge, FEDERMAN and MAHONEY, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

Charles M. Adams, the debtor in this Chapter 11 case, purports to appeal from two orders of the bankruptcy court.[1] The first order, dismissing his Chapter 11 case, was dated April 21, 2003, and entered April 22, 2003. The second order, directing the debtor to pay the United States Trustee two statutorily mandated quarterly fees totaling $500.00, was dated and entered on May 13, 2003. We conclude that the debtor did not timely appeal the order of dismissal and therefore dismiss any appeal from that order. Since we conclude that the bankruptcy court correctly determined that the debtor owed the statutory fees, we affirm the order directing their payment.

BACKGROUND

In 2001, First Tennessee Bank started an interpleader action in the Shelby County Tennessee Chancery Court against the debtor, his ex-wife, and his ex-wife's attorney alleging that all three had made claims to funds that it held as a result of its service as trustee of a trust which had terminated upon the death of the debtor's mother. As the beneficiary, the debtor made claims to the funds. His ex-wife and her attorney made claims to the fund as the result of liens granted by the Shelby County Chancery Court as part of the debtor's divorce. The debtor filed a counterclaim to the interpleader action in which he made a number of allegations against the bank.

On July 27, 2001, the debtor filed a Chapter 13 case in the Western District of Tennessee. The debtor's plan drew objections and a motion to dismiss, and on November 7, 2001, the United States Bankruptcy Court for the Western District of Tennessee denied confirmation of the debtor's plan and dismissed his case. The debtor moved to alter or amend the order. On December 5, 2001, the Tennessee

_____

[1] The Honorable Audrey R. Evans, Chief Judge, United States Bankruptcy Courts for the Eastern and Western Districts of Arkansas.

bankruptcy court[2] entered an order denying the debtor's motion. The bankruptcy court made detailed findings, including findings that the core of the debtor's reason for filing bankruptcy "is his ongoing disputes with his former spouse, her attorney and First Tennessee Bank over child support-related debts, property ownership and disposition of trust property." The bankruptcy court concluded that any issues already decided in state court were barred from being relitigated in the debtor's bankruptcy case by either the Rooker-Feldman Doctrine or principles of preclusion. Moreover, to the extent that there was unresolved issues, the bankruptcy court concluded that they were best resolved in the state court. The bankruptcy court also concluded that the debtor had filed his bankruptcy case for purposes of forum shopping and explicitly abstained from involving the bankruptcy court in any of these state law issues.

The bankruptcy court also found that the debtor's debts exceeded the statutory maximum for eligibility for Chapter 13 under 11 U.S.C. § 109(e). Based on these conclusions, the bankruptcy court found that "since the Debtor is ineligible by monetary limits for Chapter 13 relief and since the disputes in this case are prebankruptcy, state-law disputes, the Court finds that this case was filed in bad faith." The bankruptcy court then went on to deny the debtor's motion to amend or modify the November 7, 2001 order of dismissal, and added a proviso that the dismissal was "with prejudice to the Debtor filing again for bankruptcy relief in the Western District of Tennessee until such time as all pending disputes in the state courts have been resolved to final judgments."

---

[2] The Honorable William Houston Brown, United States Bankruptcy Judge for the Western District of Tennessee.

The debtor appealed the bankruptcy court's order denying his motion to alter or amend the dismissal order and on February 4, 2003, the district court[3] affirmed. The district court reviewed the record, including the debtor's own pleadings in which he indicated that the bankruptcy court action began due to "arrearages in child support payments of approximately $15,000.00, which First Tennessee refused to pay out of the trust." The district court agreed with the bankruptcy court's conclusion that the debtor engaged in forum shopping, that he was ineligible for Chapter 13 in the first place, and affirmed the bankruptcy court's conclusion that the debtor's case was filed in bad faith. The district court affirmed the bankruptcy court's order that the petition was not filed in good faith because: "1) Appellant repeatedly expressed his intention to litigate in bankruptcy court issues currently pending before Tennessee State Court; 2) Appellant had noncontingent, liquidated, secured debts in excess of the Chapter 13 statutory limit; and 3) Appellant's schedules contained numerous errors."

Meanwhile, at a hearing on January 24, 2003, the Tennessee Chancery Court orally granted the bank summary judgment on its interpleader claim. However, on February 6, 2003, before an actual written order or judgment could be entered, the debtor filed a Chapter 13 case in the Eastern District of Arkansas. The filing was incomplete in a number of ways and on the same date, the bankruptcy court entered an order in which it notified the debtor of those items that were missing and which were due within fifteen days of filing. The order also included the proviso that "the document(s) listed at the bottom of this order must be filed within the specified number of days from the date of the voluntary petition's/date of conversion or the case WILL BE DISMISSED**without further notice."

---

[3] The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee.

On March 3, 2003, rather than comply with this order, the debtor filed this Chapter 11 case. Three days later, on March 6, 2003, the United States Trustee filed his motion to dismiss with prejudice or convert the Chapter 11 case, or in the alternative, appoint a trustee. The motion also asked that if the court granted the United States Trustee's motion to dismiss, that he be granted a monetary judgment for two quarterly fees in the total of $500.00. On March 13, 2003, based on the debtor's failure to comply with the order regarding deficiencies, the bankruptcy court dismissed the debtor's Chapter 13 case.

On March 18, 2003, the debtor filed his response to the United States Trustee's motion to dismiss. In his response, the debtor argued that the Tennessee bankruptcy court's dismissal was incorrect. He further argued that in his current Chapter 11 case:

> the principle (sic) dispute herein involves fraud perpetrated by attorney Lincoln Alison Reese Hodges and First Tennessee Bank regarding the land in the three trusts...[and] further involves the claims of dozens of parties to various parcels of land in Shelby County, Tennessee which involve extremely complex issues of accounting, bank, and real estate law to say the least.

He further argued that:

> an independent examiner would be a good idea in this case as this case is going to involve negotiations with the U.S. Comptroller of Currency regarding bank fraud, the Securities and Exchange Commission, and other governmental agencies, and an independent examiner would be in a position to assist the Court in determining the true circumstances and history of this case, the true extent of the Debtor's assets which have been manipulated and which continue to be manipulated through fraudulent

5

bank practices, fraudulent appraisals, mail fraud, and other fraud of Lincoln A.R. Hodges attorney and First Tennessee Bank and others, and an independent examiner can insure that dozens of innocent persons in this cause have substantial claims against the Debtor's land holdings are not defrauded of any honest and just claims.

The debtor also admitted that he was responsible for the $500.00 in fees requested by the United States Trustee.

On April 14, 2003, the bank filed its joinder in the United States Trustee's motion to dismiss. The court held a hearing on the motion on April 15, 2003. The court heard extensive argument from the attorneys for the United States Trustee and the bank and from the debtor personally. During his presentations, the debtor made extensive arguments complaining about the bank, Lincoln Hodges, and requested an investigation due to conduct indicating that "there has been shenanigans going on that the judicial system should know about as far as money, which this is a money forum right here." The debtor extensively explained his complaints about the bank and the problems going on in the Tennessee Chancery Court.

After listening to oral argument, the court decided that taking evidence was unnecessary. The court based this conclusion on the record of previous proceedings established by the movants, and then went on to say that even if it admitted into evidence all of the exhibits which the debtor had indicated he wanted to offer, and even if the debtor was successful in obtaining attorneys and "proved every point that Mr. Adams made, it still wouldn't change the result because all, everyone of those issues is an issue for the Chancery Court."[4] After the oral ruling on the merits of the motion to dismiss, there was a long colloquy among the court, the debtor, and the

---

[4] Implicitly, the bankruptcy court thereby denied the debtor's oral motion for a continuance of the hearing. We find no abuse of discretion in that decision.

attorneys for the movants about the appropriate length of a bar on future filing. At the conclusion of the hearing, the court had still not decided on an appropriate length of the future filing bar, but indicated that it would enter a written order on dismissal with a bar that it felt was appropriate.

On April 21, 2003, the court signed an order which was entered on April 22, 2003, dismissing the debtor's case with prejudice. The court reiterated its oral finding that the debtor's Chapter 11 case had been filed in bad faith, found that the debtor had not demonstrated a genuine attempt to reorganize but rather, "has shown that his multiple petitions constitute an attempt to use bankruptcy to obstruct state court proceedings in Tennessee." The court also agreed with the Tennessee bankruptcy court that many, if not all, of the issues that the debtor wanted to involve the bankruptcy court in were barred by the doctrines of Rooker Feldman or preclusion. The bankruptcy court went on to formally dismiss the debtor's case with prejudice, and further extended the Tennessee bankruptcy court's bar to filing by prohibiting the debtor "from filing any further bankruptcy cases in the Eastern or Western Districts of Arkansas until such time as all pending disputes in the Tennessee state courts have been resolved to final judgments."

The dismissal order did not address the United States Trustee's request for judgment for his statutory fees, but in an order dated and entered May 13, 2003, the bankruptcy court ordered the debtor to pay the United States Trustee's quarterly fees for the first and second quarters of 2003, in the sum of $250.00 per quarter.

On May 22, 2003, the debtor filed a notice of appeal. In it, the debtor indicated, by filling in the official form, that he was appealing the order that was entered "on the 13th day of May 2003." On the next line he hand wrote the following: "appeal order 5-13-03 Supplement of order 4-21-03".

JURISDICTION

Both appellees argue that the debtor has failed to timely appeal the order of dismissal and we therefore lack jurisdiction over any appeal from that order.[5] It is axiomatic that an appellate court's jurisdiction is dependent upon a timely filed notice of appeal. *See Soost v. NAH, Inc. (In re Soost)*, 262 B.R. 68, 71 (B.A.P. 8th Cir. 2001) (citing *United States v. Henry Bros. P'ship (In re Henry Bros. P'ship)*, 214 B.R. 192, 197 (B.A.P. 8th Cir. 1997)). We agree with the appellees on this issue for two distinct reasons. First, we do not think that the notice of appeal filed by the debtor effectively appeals from the dismissal order. It twice indicates that the debtor's intent is to appeal from the May 13, 2003 order and the only reference to the dismissal order is in the second reference, where it indicates that the May 13th order is a supplement of the dismissal order. Nowhere does the notice of appeal ever indicate that the debtor is appealing from the April 21, 2003 order of dismissal. Second, if, somehow, the notice of appeal could be construed to act as a notice of an appeal from the dismissal order, it is clearly late. Fed. R. Bankr. P. 8002(a) provides that "the notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." Obviously, a notice of appeal filed on May 22, 2003 is well beyond the ten-day period for timely filing from an order entered on April 21, 2003.

The debtor attempts to avoid this result in a number of ways. First he argues that somehow Fed. R. Civ. P. 54(a)[6] operates to make his notice of appeal timely. He states that "the time to file an appeal does not run until costs have been assessed when a motion has been made to assess costs." There are a number of problems with this

_____

[5] The United States Trustee has also made a motion that he styles as one to strike portions of the designation of issues. This seems to us as an inappropriate way to raise jurisdictional issues and we therefore deny the motion. In any case, because of our treatment of the merits of the issue, the motion is moot.

[6] This Civil Rule would be applicable to this proceeding by operation of Rules 7054 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

argument. First, the monetary judgment requested by the United States Trustee is not for costs. They are fees provided by statute to which the United States Trustee is entitled in every Chapter 11 case. They are not costs of the action (which in this situation would be the motion to dismiss). Secondly, we see nothing in Civil Rule 54(a) which says what the debtor claims it says. While sometimes the actual entry of a judgment would be held up until costs were ascertained and assessed, so that the merits and the costs could then be inserted into a single judgment, that is not what happened here. Two separate orders were entered: one dealing with the merits of the dismissal and the second dealing with the request that judgment be entered for the statutory fees. Third, the May 13, 2003 order does not reiterate in any way the court's directive that the case be dismissed, so that it does not change in any way the date of the *entry* of the order of dismissal. Thus, even if the debtor was correct that the dismissal order did not become final until the entry of the fee order, the most that it would affect would be the finality of the dismissal order. It would not change the date of the entry of the dismissal order. Unequivocally, an order dismissing a bankruptcy case is a final order. *Mosbrucker v. U.S.* (*In re Mosbrucker*), 227 B.R. 434, 436 (B.A.P. 8th Cir. 1998). Thus, any attempt to appeal from the dismissal order had to have been filed within ten days of its entry.

Lastly, the debtor attempts to avoid the problem with the timing of his notice of appeal by relying on the Doctrine of Unique Circumstances. As a basis for this argument, he argues that the bankruptcy court made statements that it would prepare an order that would include an order as to costs which she would have to ascertain. The debtor's argument, however, is both factually and legally insufficient.

The Doctrine of Unique Circumstances is a very narrow doctrine which applies upon a showing that: 1) the party has performed an act, which, if properly done, would postpone the deadline for filing his appeal; and 2) has received specific assurance by a judicial officer that the act has been properly done. *Thompson v. Immigration and Naturalization Serv.*, 375 U.S. 384 (1964), *Faysound Limited v.*

*Falcon Jet Corp.*, 940 F.2d 339, 344 (8th Cir. 1991), *cert. denied*, 502 U.S. 1096 (1992). *United States v. Henry Bros. P'ship (In re Henry Bros. P'ship)* 214 B.R. 192, 196 (B.A.P. 8th Cir. 1997). We have searched the record of the hearing in the bankruptcy court and can find no record of the statements that the debtor claims were made by the court. As we have indicated, there is an extensive colloquy about the length of the bar that the court would impose in its dismissal order, but no discussion, much less a representation by the judge, about either the United States Trustee's statutory fee or costs. In any case, even if such a statement were made, it does not change the fact that the bankruptcy court entered an unequivocal order of dismissal which started the appeal period running and the debtor failed to timely file a notice of appeal. The Doctrine of Unique Circumstances protects people who have acted and been assured by the court that their actions are sufficient to toll the appeal period. What we have in this case is the failure to act.

In sum, we conclude that the dismissal order was a final order and that the debtor failed to timely file a notice of appeal from that order.

## STATUTORY FEES

No one disputes that the debtor has timely filed a notice of appeal from the May 13, 2003 order of the bankruptcy court requiring the debtor to pay his statutory fees to the United States Trustee. 28 U.S.C. § 1930(a)(6) requires a debtor in possession to pay a quarterly fee to the United States Trustee, for deposit in the treasury, based on disbursements during the quarter, but with a minimum of $250.00 per quarter. Since the debtor's Chapter 11 case was pending during both the first and second quarters of 2003, he is liable for a minimum of $250.00 for each quarter and the debtor acknowledges this fact. The bankruptcy court clearly did not err when it ordered the debtor to pay those fees.

CONCLUSION

Because the debtor failed to timely file a notice of appeal from the April 21, 2003 order dismissing his Chapter 11 case, we lack jurisdiction over any purported appeal from that order and any such appeal is dismissed. Because the bankruptcy court correctly determined that the debtor was responsible for two quarters of statutory fees, we affirm the order of May 13, 2003, directing him to pay those fees.

A true copy.

      Attest:

            CLERK, U.S. BANKRUPTCY APPELLATE
            PANEL, EIGHTH CIRCUIT.